Roger M. Townsend
BRESKIN, JOHNSON & TOWNSEND, PLLC
1000 Second Ave, Suite 3670
Seattle, WA  98104
Phone: (206) 652-8660

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY OLSEN,<br><br>     Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services,<br><br>     Defendant | No. 2:21-cv-00326-SMJ<br><br>DECLARATION OF JAMES PISTORINO |

Pursuant to 28 U.S.C. § 1746, I, James Pistorino, declare as follows:

  1.  I am an attorney with the law form of Parrish Law Office, counsel to the plaintiff in the above-captioned case.  I am over eighteen years of age and not a party to this case.

  2.  I searched the Federal Register at www.federalregister.gov and could find no record of CMS 1682-R (under any name) or LCD L33822 (as amended to include the requirements of CMS 1682-R) being published prior to January 12, 2017.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

3.      A true and correct copy of CMS 1682-R as issued is attached as **Exhibit A**.

4.      On information and belief, Mr. Olsen's annual income for 2021 was less than $17,000.

5.      As detailed in Koma, Neuman, and Jacobson, "Medicare Beneficiaries' Financial Security Before the Coronavirus Pandemic", (Kaiser Family Foundation April 24, 2020), 50% of Medicare beneficiaries live on less than $30,000/year and 25% live on less than $17,000/year. See https://www.kff.org/medicare/issue-brief/medicare-beneficiaries-financial-security-before-the-coronavirus-pandemic/.

6.      I am also counsel to the Plaintiffs in *Lewis, et al., v. Becerra*, Case No. 18-cv-2929, (D.D.C.) (Walton, J.).  There, the Secretary produced discovery indicating that through July 2019, ~13,000 CGM claims/month were being denied on the basis of CMS 1682-R.

7.      I am also counsel to the Plaintiff in *Linda Smith v. Becerra*, Case No. 21-cv-00047, (D. Utah) (Nielson, Jr., J.).

8.      There, Paragraph 30 of the Complaint provided:

Without notice and comment, on January 12, 2017, CMS issued Ruling No. CMS-1682-R as CMS "final opinion and order" with regard to CGM coverage.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

9.      On September 14, 2021, the Secretary served an amended "Answer" where he stated:

> Admitted that CMS Ruling 1682-R was issued on January 12, 2017, and was not preceded by notice and an opportunity for public comment. Denied that the phrase "final opinion and order" appears in CMS Ruling 1682-R. Plaintiff's characterizations of CMS Ruling 1682-R are denied. The Court is respectfully referred to the cited CMS Ruling for a full and complete statement of its contents.

A true and correct copy is attached as **Exhibit B**.

Respectfully submitted this 8th day of February, 2022.

PARRISH LAW OFFICES

By: */s/  James C. Pistorino*_____
     James C. Pistorino
     *Pro Hac Vice Pending*

     *Attorney for Plaintiff*

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

## CERTIFICATE OF SERVICE

2          I hereby certify under penalty of perjury under the laws of the state

3   of Washington that on the date below, I electronically filed the foregoing

4   document with the Clerk of the Court using the CM/ECF system which

5   will send notification of such filing to all counsel of record.

6

7   Vanessa R. Waldref
    United States Attorney
    John T. Drake
8   Assistant United States Attorney
    UNITED STATED DEPARTMENT OF JUSTICE
9   920 W. Riverside Ave, Suite 340
    Spokane, WA  99201
10

11

12          DATED this 8th day of February, 2022, at Seattle, Washington.

13

                                        *s/ Julia Wolfe*
14                                      Julia Wolfe, Legal Assistant

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JAMES PISTORINO - 4

EXHIBIT A

| | |
|---|---|
| **CMS Rulings** | **Department of Health and Human Services** |
| | **Centers for Medicare & Medicaid Services** |

Ruling No.:  **[CMS-1682-R]**                                Date:  **January 12, 2017**

**CMS Rulings** are decisions of the Administrator that serve as precedent final opinions and orders and statements of policy and interpretation.  They provide clarification and interpretation of complex or ambiguous statutory or regulatory provisions relating to Medicare, Medicaid, Utilization and Quality Control Peer Review, private health insurance, and related matters.  They are published under the authority of the Administrator of the Centers for Medicare & Medicaid Services (CMS).

**CMS Rulings** are binding on all CMS components, on all Department of Health and Human Services components that adjudicate matters under the jurisdiction of CMS, and on the Social Security Administration (SSA) to the extent that components of the SSA adjudicate matters under the jurisdiction of CMS.

This Ruling articulates CMS policy concerning the classification of continuous glucose monitoring systems as durable medical equipment under Part B of the Medicare program.

**MEDICARE PROGRAM**

Medicare Supplementary Medical Insurance (Part B)

Classification of Therapeutic Continuous Glucose Monitors as "Durable Medical Equipment" under

CMS-1682-R                                                                                                              2

Medicare Part B

**CITATIONS:**  Section 1861(n) of the Social Security Act (42 U.S.C. 1395x(n)) and

42 CFR 414.202.

**BACKGROUND**

      Medicare Part A and Part B are defined benefit programs and items and services must fall

within a statutory benefit category as prerequisite to Medicare payment under sections 1812 and

1832 of the Social Security Act (the Act).  CMS and the Medicare Administrative Contractors

(MACs) that process Medicare claims for payment make benefit category decisions based on criteria

found in the Act, regulations, and CMS instructions or guidance.  Section 1862(a) of the Act

contains statutory exclusions that serve to prohibit payment for items or services, even if the items or

services fall within a benefit category.  Among the exclusions, and subject to exceptions, section

1862(a)(1)(A) of the Act generally prohibits payment for an item or service that is not reasonable and

necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a

malformed body member.

**DURABLE MEDICAL EQUIPMENT**

      Durable medical equipment (DME) is a benefit category under Medicare Part B, defined at

section 1861(n) of the Act as follows:

CMS-1682-R                                                                                                3

The term "durable medical equipment" includes iron lungs, oxygen tents, hospital beds, and wheelchairs (which may include a power-operated vehicle that may be appropriately used as a wheelchair, but only where the use of such a vehicle is determined to be necessary on the basis of the individual's medical and physical condition and the vehicle meets such safety requirements as the Secretary may prescribe) used in the patient's home (including an institution used as his home other than an institution that meets the requirements of subsection (e)(1) of this section or section 1819(a)(1)), whether furnished on a rental basis or purchased, and includes blood-testing strips and blood glucose monitors for individuals with diabetes without regard to whether the individual has Type I or Type II diabetes or to the individual's use of insulin (as determined under standards established by the Secretary in consultation with the appropriate organizations) and eye tracking and gaze interaction accessories for speech generating devices furnished to individuals with a demonstrated medical need for such accessories; except that such term does not include such equipment furnished by a supplier who has used, for the demonstration and use of specific equipment, an individual who has not met such minimum training standards as the Secretary may establish with respect to the demonstration and use of such specific equipment.  With respect to a seat-lift chair, such term includes only the seat-lift mechanism and does not include the chair.

The term durable medical equipment is further defined and addressed in regulation and program instructions (see 42 CFR 414.202 and section 110.1 of chapter 15 of the Medicare Benefit Policy Manual (Pub. 100-02), respectively).  Under § 414.202, durable medical equipment means equipment which--

- Can withstand repeated use;

- Effective with respect to items classified as DME after January 1, 2012, has an expected life of at least 3 years;

- Is primarily and customarily used to serve a medical purpose;

- Generally is not useful to a person in the absence of an illness or injury; and

- Is appropriate for use in the home.

All requirements of the definition must be met before an item can be considered to be DME.  The requirement that equipment have an expected life of at least 3 years was added to the regulation in 2012 in order to further clarify the requirement that equipment must be durable in order to be considered

CMS-1682-R                                                                                                    4

DME.  The final rule implementing this change was titled: Medicare Program; End-Stage Renal Disease

Prospective Payment System and Quality Incentive Program; Ambulance Fee Schedule; Durable

Medical Equipment; and Competitive Acquisition of Certain Durable Medical Equipment, Prosthetics,

Orthotics, and Supplies and appeared in the November  10, 2011 **Federal Register** (76 FR 70228 and

70314).  This final rule included a discussion of how the 3-year minimum lifetime requirement (MLR) is

applied to multicomponent devices or systems consisting of durable and nondurable components

(76 FR 70291).  In that rule, we noted that a device may be a system consisting of durable and

nondurable components that together serve a medical purpose, and that we consider a multicomponent

device consisting of durable and nondurable components nondurable if the component that performs the

medically necessary function of the device is nondurable, even if other components that are part of the

device are durable.  In regards to the 3-year MLR, the component(s) of a multicomponent device that

performs the medically necessary function of the device must meet the 3-year MLR (76 FR 70291).

**BLOOD-TESTING STRIPS AND BLOOD GLUCOSE MONITORS**

        Blood glucose monitors (also referred to as self-monitoring blood glucose meters) have been

covered as DME under the Medicare program since the early 1980s and the reagent strips ("blood-

testing strips") inserted into the monitors for use in testing the patient's blood glucose have been

covered as supplies necessary for the proper functioning of the monitor.  Prior to July 1, 1998,

coverage of blood glucose monitors and test strips was limited to beneficiaries with Type I diabetes

who were insulin-treated.  Section 4105(b)(1) of the Balanced Budget Act of 1997 (Pub. L. 105-33,

enacted on July 1, 1998) amended section 1861(n) of the Act to specify that the term DME included

"…blood-testing strips and blood glucose monitors for individuals with diabetes without regard to

whether the individual has Type I or Type II diabetes or to the individual's use of insulin…."

CMS-1682-R                                                                                      5

Therefore, beginning July 1, 1998, coverage of blood glucose monitors and test strips under the

DME benefit was expanded to include beneficiaries with Type II diabetes regardless of whether they

are insulin-treated.  The current national coverage policy for standard blood glucose monitors is at

section 40.2 of the Medicare National Coverage Determinations Manual (Pub. 100-03) and, in

pertinent part, specifies:

Item/Service Description

There are several different types of blood glucose monitors that use reflectance meters to
determine blood glucose levels.  Medicare coverage of these devices varies, with respect to
both the type of device and the medical condition of the patient for whom the device is
prescribed.

Reflectance colorimeter devices used for measuring blood glucose levels in clinical settings
are not covered as durable medical equipment for use in the home because their need for
frequent professional re-calibration makes them unsuitable for home use.  However, some
types of blood glucose monitors which use a reflectance meter specifically designed for home
use by diabetic patients may be covered as durable medical equipment, subject to the
conditions and limitations described below.

Indications and Limitations of Coverage

Blood glucose monitors are meter devices that read color changes produced on specially
treated reagent strips by glucose concentrations in the patient's blood.  The patient, using a
disposable sterile lancet, draws a drop of blood, places it on a reagent strip and, following
instructions which may vary with the device used, inserts it into the device to obtain a
reading.  Lancets, reagent strips, and other supplies necessary for the proper functioning of
the device are also covered for patients for whom the device is indicated.  Home blood
glucose monitors enable certain patients to better control their blood glucose levels by
frequently checking and appropriately contacting their attending physician for advice and
treatment.  Studies indicate that the patient's ability to carefully follow proper procedures is
critical to obtaining satisfactory results with these devices.  In addition, the cost of the
devices, with their supplies, limits economical use to patients who must make frequent
checks of their blood glucose levels.  Accordingly, coverage of home blood glucose monitors
is limited to patients meeting the following conditions:

1.  The patient has been diagnosed as having diabetes;

2.  The patient's physician states that the patient is capable of being trained to use the

particular device prescribed in an appropriate manner.  In some cases, the patient may not be able to perform this function, but a responsible individual can be trained to use the equipment and monitor the patient to assure that the intended effect is achieved. This is permissible if the record is properly documented by the patient's physician; and

3.  The device is designed for home rather than clinical use.

**BENEFIT CATEGORY OF THERAPEUTIC CONTINUOUS GLUCOSE MONITORS**

Continuous glucose monitors (CGMs) monitor a patient's glucose level on a continuous basis (for example, every 5 minutes).  CGMs are class III medical devices and require premarket approval by the Food and Drug Administration (FDA).

Certain CGM devices consist of three components: a glucose sensor, a transmitter, and a receiver.  The glucose sensor continuously measures glucose values (for example, every 5 minutes) in the interstitial fluid, the fluid around the cells (in contrast to blood glucose monitors which measure glucose values using fingertip blood samples).  The sensor is a small flexible metal probe or wire that is inserted just below the skin and has a coating that prevents the body's immune system from detecting and attacking the foreign probe.  Once the coating wears off in 6 or 7 days, the sensor must be replaced for safety reasons.  The glucose sensor generates a small electrical signal in response to the amount of sugar that is present (interstitial glucose).  This electrical signal is converted into a glucose reading that is then sent by tiny electrodes to the transmitter.  The transmitter sends the measurements wirelessly to a dedicated receiver (or type of monitor) and/or compatible mobile device (smart phone, tablet, etc.) for display to a user.  The receiver displays the glucose measurements in the form of a graph so that the patient can visualize how their glucose measurements are trending up or down.

Medicare does not cover CGMs approved by the FDA for use as adjunctive devices to

complement, not replace, information obtained from blood glucose monitors.  In our view, such

devices are not used for making diabetes treatment decisions, such as changing one's diet or insulin

dosage based solely on the readings of the CGM, and therefore, have not been covered under

Medicare because they are not considered to serve the medical purpose of making diabetes treatment

decisions.  In addition, CMS has viewed the nondurable sensors that measure the patient's glucose

level as performing the medically necessary function of the system, and therefore, the system as a

whole has not been regarded as durable equipment.  This Ruling applies to certain CGMs furnished

on or after the effective date of the Ruling.

The FDA recently approved expanding the indications of one CGM product to include

replacement of blood glucose monitors for diabetes treatment decisions.  This Ruling addresses

whether "therapeutic" CGMs, which provide information that can be used to make diabetes treatment

decisions meet the definition of DME.  For the purpose of this Ruling, all CGMs that are approved

by the FDA for use as adjunctive devices to complement, not replace, information obtained from

blood glucose monitors in making diabetes treatment decisions are referred to as "non-therapeutic"

CGMs.

As noted previously, the regulation at 42 CFR 414.202, specifies that durable medical

equipment means equipment which: can withstand repeated use; effective with respect to items

classified as DME after January 1, 2012, has an expected life of at least 3 years; is primarily and

customarily used to serve a medical purpose; generally is not useful to a person in the absence of an

illness or injury; and is appropriate for use in the home.  Therapeutic CGMs must meet all five of

these criteria in order to be classified as DME.  We address all of the criteria below – though we

address the first two criteria of the DME definition later in the discussion given that both criteria

CMS-1682-R                                                                                          8

relate to the issue of durability.

**Primarily and Customarily Used to Serve a Medical Purpose**

According to the FDA approval letter for the therapeutic CGM: the indications for use of the product have been expanded to include replacement of blood glucose monitors for diabetes treatment decisions; the device is indicated as a glucose monitoring system for the management of diabetes in persons age 2 years and older; interpretation of the results of the device should be based on the glucose trends and several sequential readings over time; the product also aids in the detection of episodes of hyperglycemia and hypoglycemia, facilitating both acute and long-term therapy adjustments; and the device is intended for single patient use and requires a prescription. The therapeutic CGM must be calibrated twice a day using a blood glucose monitor.

Based on this information, the therapeutic CGM is designed and approved to replace a blood glucose monitor currently classified as DME under the Medicare program, but the device must be calibrated twice a day using a blood glucose monitor. Therefore, for patients with a medical need to continuously test their glucose levels, the therapeutic CGM would be used to serve the medical purpose for the indications specified previously. That is, the therapeutic CGM would primarily and customarily be used to serve a medical purpose under the Medicare DME definition.

**Generally Not Useful to a Person in the Absence of an Illness or Injury**

The therapeutic CGM is only used for the purpose of monitoring glucose levels and is not useful to a person without diabetes because it serves no other purpose.

**Appropriate for Use in the Home**

The FDA approval letter indicates that the therapeutic CGM is used to replace a blood glucose monitor for use in making diabetes treatment decisions. Therefore, the device is appropriate

for use in the home for the same purpose that a blood glucose monitor is used in the home.

**Expected Life of at Least 3 Years**

As we noted previously, the criterion that equipment have an expected lifetime of at least 3 years was added to the regulatory definition of DME at 42 CFR 414.202 in 2012. This criterion further addresses the issue of "durability" and provides a clear minimum timeframe for how long an item of DME should last. As noted previously, for multicomponent equipment (that is, a system of durable and nondurable components), the component that performs the medically necessary function of the equipment must be durable in order for the device to be considered DME.

The medically necessary function of a glucose monitor is to inform the patient about their glucose level so that they can make diabetes treatment decisions such as changing their diet or insulin dosage. The blood glucose monitor reads the glucose level on the test strip and displays the reading for the patient. In the case of a non-therapeutic CGM, the device is approved to complement, not replace, blood glucose monitors, and therefore, no component of this device is considered to perform the medically necessary function of a glucose monitor. In the case of a therapeutic CGM, the device is approved to replace blood glucose monitors for making diabetes treatment decisions, and therefore, the system as a whole can replace the blood glucose monitor for certain patients.

As noted previously, the glucose sensor component must be replaced every 6 to7 days and therefore, is not durable because it would not meet the 3-year MLR. The transmitter has an expected life of 3 months and for the same reasons, is also not durable. As for the receiver, reliability analysis data from an engineering firm that evaluated the receiver component of the recently approved therapeutic CGM predicts a lifetime of greater than 3 years for the receiver. Therefore, we believe

that the receiver has an expected life of at least 3 years and is the only component of the therapeutic

CGM that can be considered durable and satisfy the 3-year MLR criterion of the definition.  This

component also must perform the medically necessary function of the device in order for the device

itself to be considered DME (assuming all other criteria of the definition are met).  All three

components of the therapeutic CGM system are necessary for the device to function, and necessary

for patients who must be aware of changing glucose levels throughout the day and night in order to

make diabetes treatment decisions.  The durable receiver component that allows patients who need to

frequently check their glucose levels to visually see their glucose level, check how those glucose

levels are trending, and determine whether those glucose levels are rising or falling so that he or she

can make appropriate diabetes treatment decisions in accordance with the FDA-approved indications

for the device.  Therefore, given that the receiver performs the medically necessary function of the

device, we believe that the therapeutic CGM device approved as a replacement for blood glucose

monitors for diabetes treatment decisions would satisfy the 3-year MLR.

**Ability to Withstand Repeated Use**

The final criterion under the definition at §414.202, which also relates to durability, is the

requirement that equipment be able to withstand repeated use.  In addition to the regulation at

§ 414.202, Medicare program instructions at section 110.1 of chapter 15 of the Medicare Benefit

Policy Manual (Pub. 100-02) provide that an item is considered durable if it can "withstand repeated

use," – for example, the type of item that could normally be rented.  As discussed previously, we

view the receiver as the primary component that performs the primary medical function and that is

the component that we assess in regards to the issue of durability.  The receiver for a therapeutic

CGM is durable because it can be used repeatedly to monitor the trending of a patient's glucose

levels.  Therefore, this equipment meets the requirement to withstand repeated use; that is,

equipment that could be rented.

In this Ruling, we recognize that the therapeutic CGM is durable medical equipment under

section 1861(n) of the Act, and therefore, falls within the scope of Medicare Part B benefit category

for DME.  We are not addressing any other coverage criteria through this Ruling.  In the future, CMS

may issue a separate policy such as a national coverage determination.  In the alternative, MACs may

issue local coverage determination concerning section 1862(a)(1)(A) of the Act, or coverage may be

determined on a claim-by-claim basis.

**PAYMENT RULES**

Medicare payment for DME was made on a reasonable charge basis from 1965 through 1988.

The regulations related to implementation of the reasonable charge payment methodology are found

at 42 CFR part 405, subpart E.  The payment rules for glucose monitors and other DME are located

at section 1834(a) of the Act and mandate payment on the basis of fee schedule amounts beginning

in 1989.  Glucose monitors are classified as routinely purchased items subject to the payment rules

for inexpensive and routinely purchased DME at section 1834(a)(2) of the Act, which mandate that

the fee schedule amounts for these items be based on average reasonable charges for the purchase or

rental of the item for the 12-month period ending on June 30, 1987, increased by the percentage

increase in the consumer price index for all urban consumers (U.S. city average) for the 6-month

period ending with December 1987.  These base fee schedule amounts are increased on an annual

basis beginning in 1991, based on the covered item update factors located in section 1834(a)(14) of

the Act, which includes specific update factors for 2004 through 2008 for class III medical devices

described in section 513(a)(1)(C) of the Federal Food, Drug, and Cosmetic Act.  Routinely

purchased equipment is defined in the regulations at 42 CFR 414.220(a)(2) as "equipment that was

acquired by purchase on a national basis at least 75 percent of the time during the period July 1986

through June 1987."  Section 1834(a)(1)(C) of the Act states that "subject to subparagraph (F)(ii),

this subsection shall constitute the exclusive provision of this title [Title XVIII of the Act] for

payment for covered items under this part [Medicare Part B] or under Part A to a home health

agency."

**PAYMENT FOR THERAPEUTIC CONTINUOUS GLUCOSE MONITORS**

For a therapeutic CGM covered as a glucose monitor under the DME benefit, specifically as a

monitor approved by the FDA to replace a blood glucose monitor, it would be subject to the

exclusive payment rules contained at section 1834(a)(2) of the Act.  Specifically, the fee schedule

amounts for the purchase or rental of the durable equipment (the receiver) must be calculated using

average reasonable charges from 1986 and 1987 for glucose monitors, increased by annual covered

item update factors specified in section 1834(a)(14) of the Act, including update factors specified for

class III devices for the years 2004 through 2008.  These calculations result in 2017 statewide fee

schedule amounts for the purchase of a new durable monitor/receiver for a therapeutic CGM ranging

from approximately $236 to $277.  The fee schedule amounts for purchase of used equipment would

be based on 75 percent of the fee schedule amounts for purchase of new equipment, or

approximately $177 to $208.  The fee schedule amounts for the monthly rental of the equipment

would be based on 10 percent of the fee schedule amounts for purchase of new equipment, or

approximately $24 to $28.  Total payments for the equipment (any combination of rentals or

purchase claims) cannot exceed the fee schedule amount for purchase of new equipment.  These fee

schedule amounts will be increased in 2018 and subsequent years based on the covered item update

CMS-1682-R                                                                                             13

factors at section 1834(a)(14) of the Act.

**PAYMENT FOR ACCESSORIES ESSENTIAL FOR THE EFFECTIVE USE OF
THERAPEUTIC CONTINUOUS GLUCOSE MONITORS**

Medicare also pays for replacement of essential accessories for necessary DME on the basis
of fee schedule amounts calculated using average reasonable charges for the items for the 12-month
period ending on June 30, 1987, increased by annual covered item update factors.  In addition to the
payment for the therapeutic CGM item of DME (the receiver), monthly fee schedule amounts will be
used to pay for replacement of the sensors, transmitters, and all other accessories and supplies
essential for the effective use of the receiver.  For 2017, the monthly fee schedule amount is $248.38
and is established in accordance with the fee schedule gap-filling instructions located at section 60.3
of chapter 23 of the Medicare Claims Processing Manual (Pub. 100-04).  The monthly fee schedule
amount is established using invoice prices for four sensors, a monthly allowance for transmitters
based on manufacturer prices, the 2017 fee schedule amount for alkaline batteries used in glucose
monitors (HCPCS code A4233), the 2017 fee schedule amount for purchase of a blood glucose
monitor (HCPCS code E0607) necessary for calibration of the therapeutic CGM, divided by 60 (the
number of months in the reasonable useful lifetime of the blood glucose monitor), and the 2017 fee
schedule amount for 60 blood glucose test strips (HCPCS code A4253) necessary for calibration of
the therapeutic CGM.  The $248.38 fee schedule amount will be increased in 2018 and subsequent
years based on the covered item update factors at section 1834(a)(14) of the Act.

**CONCLUSION**

For CGM products that are used in the home and approved by the FDA for use in place of a
blood glucose monitor for making diabetes treatment decisions, these therapeutic CGMs are

CMS-1682-R                                                                                        14

primarily and customarily used to serve a medical purpose because they are used by Medicare

beneficiaries with diabetes who must measure their glucose level frequently and check trends in their

glucose measurements for the purpose of adjusting their diet and insulin in the treatment of their

diabetes.  Because they are used directly in making diabetes treatment decisions, as opposed to

alerting the patient to use a blood glucose monitor to make those decisions, they are not

precautionary in nature.  A receiver (or type of monitor) for a therapeutic CGM that has an expected

life of at least 3 years and is the component performing the medically necessary function of

accurately monitoring the trends of the patients' blood glucose levels so that he or she can make

necessary diabetes treatment decisions meets the 3-year MLR.  The system as a whole replaces the

blood glucose monitor for glucose monitoring purposes.  As a result, the durable receiver for a

therapeutic CGM is considered DME.  For therapeutic CGMs, the glucose sensors and transmitters

are considered essential accessories necessary for the effective use of the therapeutic CGM and

replacement of the glucose sensors and transmitters are considered replacements of essential

accessories necessary for the effective use of DME.

 Although this ruling is to classify these items as DME items, specifically glucose testing

equipment, and related accessories essential for the effective use of glucose testing equipment,

section 1862(a)(1)(A) of the Act would still prohibit Medicare payment for these items if they are not

determined to be reasonable and necessary for the treatment of the diabetes illness.

 Continuous glucose monitoring systems are considered therapeutic CGMs that meet the

definition of durable medical equipment at section 1861(n) of the Act and 42 CFR 414.202 if the

equipment--

  ● Is approved by the FDA for use in place of a blood glucose monitor for making diabetes

CMS-1682-R                                                                                                                    15

treatment decisions (for example, changes in diet and insulin dosage);

- Generally is not useful to the individual in the absence of an illness or injury;

- Is appropriate for use in the home; and

- Includes a durable component (a component that CMS determines can withstand repeated use and has an expected lifetime of at least 3 years) that is capable of displaying the trending of the continuous glucose measurements.

In all other cases in which a CGM does not replace a blood glucose monitor for making diabetes treatment decisions, a CGM is not considered DME.  This Ruling does not apply to items and services furnished prior to the effective date of the Ruling.

CMS-1682-R

**EFFECTIVE DATE**

This Ruling is effective January 12, 2017.

Dated:  ___JAN 12 2017___ _ _

Patrick Conway,
Acting Principal Deputy Administrator,
Centers for Medicare & Medicaid Services.

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

LINDA P. SMITH,       )
      )
      Plaintiff,       )
      )
      v.       )       Case No. 1:21-cv-47-HCN-DBP
      )
XAVIER BECERRA, in his official       )
capacity as Secretary of Health and       )
Human Services,       )
      )
      Defendant.       )
      )

## AMENDED ANSWER

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), the Defendant, Xavier Becerra, Secretary of Health and Human Services (the "Secretary"), respectfully amends his answers to the allegations of the Complaint as follows. The Secretary notes that, pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings.

1. This paragraph consists of plaintiff's characterization of this lawsuit, to which no response is required.

2. This paragraph consists of plaintiff's legal conclusions regarding subject-matter jurisdiction, to which no response is required.

3. This paragraph consists of plaintiff's legal conclusions regarding venue, to which no response is required.

4. Admitted that Mrs. Smith in an individual and is eligible for Medicare. The Secretary lacks sufficient knowledge or information to form a belief about the truth of the allegation that Mrs. Smith is currently a resident of Utah.

5.      Admitted that Xavier Becerra is the Secretary of Health and Human Services.  The remainder of this paragraph consists of plaintiff's characterization of this lawsuit, to which no response is required.

6.      This paragraph consists of factual allegations regarding diabetes.  The final two sentences describe a report published by the Centers for Disease Control, which speaks for itself.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of the remainder of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

7.      This paragraph consists of factual allegations regarding diabetes.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

8.      This paragraph consists of factual allegations regarding diabetes.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate

2

statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

9.  This paragraph consists of factual allegations regarding diabetes.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

10.  This paragraph consists of factual allegations regarding diabetes.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

11.  This paragraph consists of factual allegations regarding diabetes.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

12.     This paragraph consists of factual allegations regarding glucose tests.   The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.   Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.   To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

13.     This paragraph consists of factual allegations regarding glucose tests.   The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.   Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.   To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

14.     This paragraph consists of factual allegations regarding continuous glucose monitors.  The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.   Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.   To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

15.     This paragraph consists of factual allegations regarding continuous glucose monitors.  The Secretary lacks sufficient knowledge or information to form a belief about the truth

of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

16. This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

17. This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

18. This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their

respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

19.     This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

20.     This paragraph consists of factual allegations regarding continuous glucose monitors. The fourth sentence describes a report published by the Centers for Disease Control, which speaks for itself. The Secretary lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

21.     This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their

respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

22. This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

23. This paragraph consists of factual allegations regarding continuous glucose monitors. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

24. Admitted that the Food and Drug Administration (FDA) has approved the Dexcom G5 Mobile Continuous Glucose Monitoring System for commercial distribution. This paragraph summarizes and characterizes the FDA's premarket approval decision, which speaks for itself.

25. Admitted that the Secretary has adhered to the view that some continuous glucose monitors are not covered as durable medical equipment. Denied that the Secretary has "resisted" covering such devices, or that his position has been "[i]nexplicabl[e]."

26.     This paragraph consists of plaintiff's characterizations of the Medicare statute, to which no response is required.  The Court is respectfully referred to the cited statutory provisions for a full and complete statement of their contents.

27.     This paragraph consists of plaintiff's characterizations of the Secretary's regulations, to which no response is required.  The Court is respectfully referred to the cited regulatory provision for a full and complete statement of its contents.

28.     This paragraph consists of plaintiff's characterization of the Medicare statute, to which no response is required.  Admitted that the statute contains the quoted language.  The Court is respectfully referred to the cited statutory provision for a full and complete statement of its contents.

29.     This paragraph consists of plaintiff's characterization of the Medicare statute, to which no response is required.  The Court is respectfully referred to the cited statutory provisions for a full and complete statement of their contents.

30.     Admitted that CMS Ruling 1682-R was issued on January 12, 2017, and was not preceded by notice and an opportunity for public comment.  Denied that the phrase "final opinion and order" appears in CMS Ruling 1682-R.  Plaintiff's characterizations of CMS Ruling 1682-R are denied.  The Court is respectfully referred to the cited CMS Ruling for a full and complete statement of its contents.

31.     Admitted that the phrase "binding on all CMS components, on all Department of Health and Human Services components that adjudicate matters under the jurisdiction of CMS, and on the Social Security Administration" appears in CMS Ruling 1682-R, at page 1.  Plaintiff's characterizations of CMS Ruling 1682-R are denied.  The Court is respectfully referred to the cited CMS Ruling for a full and complete statement of its contents.

32.     Plaintiff's characterizations of CMS Ruling 1682-R are denied.  The Court is respectfully referred to the cited CMS Ruling for a full and complete statement of its contents.

33.     Plaintiff's characterizations of CMS Ruling 1682-R are denied.  The Court is respectfully referred to the cited CMS Ruling for a full and complete statement of its contents. Admitted that CMS Ruling 1682-R contains the quoted language.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

34.     Plaintiff's characterizations of CMS Ruling 1682-R are denied.  The Court is respectfully referred to the cited CMS Ruling for a full and complete statement of its contents.

35.     Admitted that the Secretary has denied Medicare coverage for some continuous glucose monitors on the grounds that they are not "primarily and customarily used to serve a medical purpose" within the meaning of the Medicare regulations.  The Secretary otherwise lacks sufficient knowledge or information to form a belief about the truth of these factual allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these factual allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case.

36.     Denied.

9

37.     Admitted that Local Coverage Determination L33822 and Policy Article A52464 were revised to account for CMS Ruling 1682-R, and that this revision was not preceded by notice and an opportunity to comment.  The Court is respectfully referred to Local Coverage Determination L33822 and Policy Article A52464 for a full and complete statement of their contents.

38.     Denied.

39.     Admitted that the Secretary has denied coverage of certain continuous glucose monitors on the grounds that they are not "primarily and customarily used to serve a medical purpose" within the meaning of the Medicare Part B regulations.

40.     Admitted that the Secretary has adhered to the view that some continuous glucose monitors are not covered as durable medical equipment.  The characterizations of Policy Article A52464 are denied.  The Court is respectfully referred to Policy Article A52464 for a full and complete statement of its contents.  Otherwise denied.

41.     Admitted that Medicare coverage of continuous glucose monitors has been reviewed by several district courts.

42.     Admitted that some administrative law judges have concluded that certain continuous glucose monitors are covered as durable medical equipment under the Medicare statute and regulations.  The Secretary otherwise lacks sufficient knowledge or information to form a belief about the truth of these factual allegations.  The web address provided in this paragraph appears to be inactive.

43.     Admitted that certain district courts have concluded that continuous glucose monitors are covered as durable medical equipment under the Medicare Part B statute and regulations.

44.     The Secretary denies the characterizations of the cited district court decisions, which speak for themselves.  The Court is respectfully referred to the cited decisions for a full and complete statement of their contents.

45.     The Secretary denies the characterizations of the district court decisions described in this paragraph, which speak for themselves.  The Court is respectfully referred to those district court decisions for a full and complete statement of their contents.

46.     The Secretary denies the characterization of the cited administrative decision, which speaks for itself.  The Court is respectfully referred to the cited decision for a full and complete statement of its contents.

47.     The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

48.     The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

49.     The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

50.     The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

51.     Admitted that Mrs. Smith was prescribed a MiniMed 630G system, which is an insulin pump.  Admitted that Mrs. Smith was also prescribed with sensors and a transmitter for a continuous glucose monitoring system.

52.     Admitted that the sensors and transmitter communicate with the insulin pump. Otherwise denied.

53.     The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for

a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

54.    This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal Nos. 1-6020086584 and 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal Nos. 1-6020086584 & 1-6020086584R1, "Mrs. Smith . . . litigated the issue[] of whether her CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was covered by Medicare Part B. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

55.    Admitted that the decision in ALJ Appeal No. 1-6020086584R1 indicates that Mrs. Smith received continuous glucose monitor sensors on October 29, 2015. The Secretary otherwise lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

56.    Admitted.

57. Admitted that Administrative Law Judge Lambert held a hearing in ALJ Appeal No. 1-6020086584. The Secretary otherwise lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

58. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

59. It is denied that, in ALJ Appeal No. 1-6020086584, "The issue[] of whether Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was covered by Medicare Part B "was actually litigated before ALJ Lambert." The Secretary otherwise lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not

reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

60. Admitted that Administrative Law Judge Lambert issued a decision in ALJ Appeal No. 1-6020086584 on May 1, 2017, and found that the supplies in question were covered by Medicare Part B.

61. This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584, "ALJ Lambert found that Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was "covered by Medicare." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

62. This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584, "ALJ Lambert determin[ed] that Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was "covered by Medicare." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and

accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

63.    Admitted that the Medicare Appeals Council reversed the decision in ALJ Appeal No. 1-602008658464 and remanded for further proceedings. This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings before the Medicare Appeals Council. No response to the legal conclusions is required, and the characterizations are denied. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

64.    Admitted that Administrative Law Judge Lambert held a hearing in ALJ Appeal No. 1-6020086584R1 on April 4, 2018. The Secretary otherwise lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

65.    The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their

respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

66.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584R1, "The issue[] of whether Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was covered by Medicare Part B "was actually litigated before ALJ Lambert." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

67.     Admitted that Administrative Law Judge Lambert issued a decision in ALJ Appeal No. 1-6020086584R1 on April 24, 2018, and found that the supplies in question were covered by Medicare Part B.

68.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584R1, "ALJ Lambert found that Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was "primarily and

customarily used to serve a medical purpose." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

69.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584R1, "ALJ Lambert . . . found that Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was "durable medical equipment." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

70.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584R1, "ALJ Lambert . . . found that Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was "medically reasonable and necessary." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this

action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

71.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584R1, "ALJ Lambert . . . found that Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here—was "covered by Medicare." Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

72.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. It is specifically denied that, in ALJ Appeal No. 1-6020086584R1, ALJ Lambert made any "determinations" regarding "Mrs. Smith's CGM"—that is, the device she was provided on December 13, 2016, the coverage of which is at issue here. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings;

Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

73.     Denied.

74.     Admitted. As noted in response to paragraph 73, the Secretary denies that he could have appealed this decision.

75.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in ALJ Appeal No. 1-6020086584R1. No response to the legal conclusions is required, and the characterizations are denied. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

76.     Admitted that, as reflected in the administrative record, Mrs. Smith submitted a claim for continuous glucose monitor sensors which were provided on May 15, 2018.

77.     Admitted that, as reflected in the administrative record, Mrs. Smith's claim was denied on June 8, 2018.

78.     Admitted that, as reflected in the administrative record, Mrs. Smith's claim was denied on redetermination on July 10, 2018.

79.     Admitted that, as reflected in the administrative record, Mrs. Smith's claim was denied on reconsideration on August 3, 2018.

80. Admitted that, as reflected in the administrative record, Mrs. Smith sought a hearing before an administrative law judge.

81. Admitted that, as reflected in the administrative record, Administrative Law Judge Win held a hearing on December 11, 2018.

82. The Secretary lacks sufficient knowledge or information to form a belief about the truth of these allegations. Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents. To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

83. Admitted.

84. Admitted that, as reflected in the administrative record, ALJ Win denied coverage of the claim at issue in ALJ Appeal No. 1-8048583213 on the grounds that the underlying device was not durable medical equipment.

85. Admitted that, as reflected in the administrative record, Mrs. Smith submitted a claim for continuous glucose monitor sensors which were provided on November 16, 2017.

86. Admitted.

87. Admitted that, as reflected in the administrative record, Mrs. Smith sought a hearing before an administrative law judge.

88. Admitted that, as reflected in the administrative record, Administrative Law Judge Win held a hearing on February 19, 2019.

89. Admitted.

90.     Admitted that, as reflected in the administrative record, ALJ Win denied coverage of the claim at issue in ALJ Appeal No. 1-8048536100 on the grounds that the device in question was not durable medical equipment.

91.     Admitted.

92.     Admitted that the Medicare Appeals Council affirmed the decisions in ALJ Appeals Nos. 1-8048583213 and 1-8048536100 in a single decision issued on February 26, 2021.

93.     Denied.

94.     This paragraph consists of plaintiff's legal conclusions and characterizations of the proceedings in Medicare Appeals Council case M-19-1973.  No response to the legal conclusions is required, and the characterizations are denied.  Admitted that the Medicare Appeals Council held that the device in question was not durable medical equipment within the meaning of the Medicare statute and regulations, as interpreted by CMS Ruling 1682-R.  Pursuant to 42 U.S.C. § 1395ff(b)(1)(A), the Court's review in this action is based solely on the administrative record, rather than the allegations of the parties in their respective pleadings; Defendant thus respectfully refers the Court to the administrative record for a full and accurate statement of its contents.  To the extent that these allegations are not reflected in the administrative record, they are beyond the scope of the Court's review in this case, and no response is required.

95.     Denied.

96.     Admitted that Mrs. Smith filed this suit on April 5, 2021.

97.     In this paragraph, plaintiff repeats the paragraphs set forth above.  The Secretary incorporates by reference his answers to all of the preceding paragraphs as if fully set out herein.

98.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

99.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

100.     In this paragraph, plaintiff repeats the paragraphs set forth above.  The Secretary incorporates by reference his answers to all of the preceding paragraphs as if fully set out herein.

101.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

102.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

103.     In this paragraph, plaintiff repeats the paragraphs set forth above.  The Secretary incorporates by reference his answers to all of the preceding paragraphs as if fully set out herein.

104.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

105.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

106.     In this paragraph, plaintiff repeats the paragraphs set forth above.  The Secretary incorporates by reference his answers to all of the preceding paragraphs as if fully set out herein.

107.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

108.     This paragraph consists of a request for relief, to which no response is required. The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

The remaining paragraphs of the complaint contain plaintiff's requested relief, to which no response is required.  The Secretary denies that plaintiff is entitled to the requested relief or any relief whatsoever.

The Secretary denies any and all allegations of the complaint not expressly admitted herein.


Dated:  September 14, 2021                     Respectfully submitted,

                                               BRIAN M. BOYNTON
                                               Acting Assistant Attorney General

                                               MICHELLE BENNETT
                                               Assistant Director, Federal Programs Branch

                                               */s/ James Bickford*
                                               JAMES BICKFORD
                                               Trial Attorney (N.Y. Bar No. 5163498)
                                               United States Department of Justice
                                               Civil Division, Federal Programs Branch
                                               1100 L Street, NW
                                               Washington, DC 20530
                                               James.Bickford@usdoj.gov
                                               Telephone: (202) 305-7632
                                               Facsimile: (202) 616-8470

                                               *Counsel for Defendant*