
# EXHIBIT A

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

LINDA P. SMITH,

Plaintiff-Appellant,

-vs- No. 22-4012

XAVIER BECERRA, in his capacity as Secretary of the United States Department of Health and Social Services,

Defendant-Appellee.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF RECORDED ORAL ARGUMENTS

THE PANEL: CHIEF JUSTICE TIMOTHY TYMKOVICH
JUDGE ALLISON EID
JUDGE JOEL CARSON

TRANSCRIPT OF ORAL ARGUMENTS, taken in the above-entitled action, from an audio recording of proceedings held on Tuesday, May 17, 2022.

* * * * *

A P P E A R A N C E S

JAMES C. PISTORINO,
Attorney at Law,
appearing on behalf of the plaintiff-appellant;

JOSHUA KOPPEL,
Attorney at Law,
appearing on behalf of the defendant-appellee.

* * * * *

THE CHIEF JUSTICE: I'll call our last case, 22-4012, Smith vs. Becerra. And Mr. Pistorino.

MR. PISTORINO: Thank you, Your Honor. James Pistorino on behalf of Mrs. Smith. Nearly five years after submitting -- after presenting her claim for Medicare coverage, Ms. Smith finally reached the district court, the first tribunal in the appeal process with the power to review and invalidate 1682-R. The district court erred as a matter of law when it allowed the Secretary to avoid any judicial review when it concluded that the Secretary's agreement to pay her claims afforded Ms. Smith complete relief and left the court with no power to address the rest of Ms. Smith's causes of action, including her request for injunctive relief against 1682-R.

The district court's two-sentence docket entry entering judgment remanding solely for payment of Ms. Smith's claims but failing to make any findings or even consider the nonmonetary relief sought ignores that Ms. Smith's other causes of action were not alternative theories for monetary recovery.

Instead they sought separate nonmonetary relief, including an injunction.

JUDGE CARSON: Do you interpret the May 13th revised ruling as basically granting you a successful outcome on all your other pending claims?

MR. PISTORINO: When you say the May 13th revised ruling, you mean -- are you referring to the document that was submitted on Friday at 4:15?

JUDGE CARSON: Yes.

MR. PISTORINO: So the first answer is no. I mean, honestly, again Ms. Smith sought --

JUDGE CARSON: You don't interpret that as giving you a win across the board --

MR. PISTORINO: No.

JUDGE CARSON: -- on pending claims? Why not?

MR. PISTORINO: Again first off, again there's no injunction against the enforcement of 1682, number one. There's no determination that the Secretary's process of issuing rulings without complying with notice and comment is in violation of the law. Throughout this entire case and throughout the entire really five-year

period this matter has been litigated, the Secretary contends that they have the power to issue rulings in violation of 1395h, the notice and comment provision specific to the Medicare Act, and as the Secretary said below here and somewhat in the papers to this Court, the Secretary contends the district courts have no power to stop the agency from enacting illegally in that way.

JUDGE CARSON: So you're not going to declare victory?

MR. PISTORINO: No. No, I wish -- frankly, I wish I could.

JUDGE CARSON: Honestly, we need to determine whether this is still justiciable under the mootness doctrine. What's your kind of best response that it's not moot?

MR. PISTORINO: Right. So again obviously we got the same papers you guys got on Friday afternoon. If I could just maybe quickly two -- a few points on that. I actually thought it was quite interesting in that essentially if you were to read that document as sort of across the board, they admitted what I've been saying the entire time, that CGMs are in fact blood

glucose monitors as that term is used in the statutes.

JUDGE CARSON: Yeah, congratulations.

MR. PISTORINO: Thank you, Your Honor. So across the board admitting, for example, that the technical direction letter you saw mentioned here, that that also did not stop the conduct. Again you saw Judge Mendoza in the Olson case out of Spokane say again that didn't stop it. So through Friday, I'll say in our view, the submission they made admitted that everything they'd said before was wrong and everything we said was right and so the case as it stood before the district court certainly was not moot and you still had the power, now coming to the effect potentially Friday's letter.

So generally we would just respond sort of three main points. First, I know we turned in a letter, I apologize for it, late Sunday night citing the W. T. Grant case from the Supreme Court going down the voluntary cessation points and, of course, pointing out that the mere ceasing of the illegal conduct does not deprive the Court of jurisdiction to

issue an injunction is our number one, because, of course, if they just stopped it, it would allow them to continue the illegal conduct on a going forward basis just as soon as this case was resolved.

Next we -- let me just make sure I -- so I think another important aspect that we could get into, of course, is as we've been saying all along, basically in our view, you just have bad faith conduct from the get-go on the 27 -- 1682-R throughout the whole process. So one aspect here is whether or not at the end of the day, and I think as Judge Mendoza said, whether or not they can be trusted with whatever they say now, and I think as Judge Mendoza said, again I know that we cited to, that he had significant concerns that whatever they say could be trusted, and that's one reason there, for example, he said no, it's not moot based on the TDL.

JUDGE CARSON: Well, let's just talk about this for just a second, and I don't mean to interrupt. But as far as the claims that you have that are currently ripe for a decision, you win. They agreed to that. You're not worried

that they're going to go back after they confessed error and it was remanded for you to get your damages, that they're going to on those claims try to jerk the rug out from under you and say no, we're not going to pay them, we don't -- we've changed our mind, we're not confessing here, right?

MR. PISTORINO: I agree with you in the sense I'm not concerned that Ms. Smith will not be paid for the three claims that are in this case. But I am concerned, number one, that there's been no finding that her CGM is durable medical equipment. Because there's no -- sadly, there's no cure for type 1 diabetes that she suffers from, she will have continued claims going forward. And one aspect --

JUDGE CARSON: Right. So let me stop you there, so -- and then you have other claims that are pending that have not been ruled on by a district court.

MR. PISTORINO: Correct.

JUDGE CARSON: And you also want as part of your relief with respect to your appeal from these three denials, you want relief as to those that you have that are pending?

MR. PISTORINO: No, that's not correct.

JUDGE CARSON: Well, that's what your injunction would do, isn't it? If you enjoin them from enforcing it, then it basically gives you a win on your other pending claims before the district court? Because if we're not doing that, I mean if you win on everything that's properly up here, what do you have? What are we enjoining? You've already won.

MR. PISTORINO: So I just want to make clear because I know there's many different claims at issue. So we have the three claims at issue in this case.

JUDGE CARSON: Right.

MR. PISTORINO: Three claims at issue in this case, let's focus on those for a moment.

JUDGE CARSON: Right, and that's my point. I mean there's nobody in this room, is there, that thinks that those claims are still in play? You won on those.

MR. PISTORINO: I think with regard to payment of those three claims, we won. But what we also asked for again was the nonmonetary

9

relief, right, and there's different components of that.

JUDGE CARSON: Okay. But let me ask you, so your nonmonetary relief as it goes to those three claims, I mean what is it? I mean what are you getting with respect to those three claims other than payment?

MR. PISTORINO: You're getting --

JUDGE CARSON: You submitted them for payment. They denied it. You appealed. You won and now -- but you also won an injunction. I just don't get with those three claims what's left.

MR. PISTORINO: Right. So you keep on saying we won, and I agree that we won in terms of the payment, but again I have multiple causes of action with different forms of relief. All the other ones are nonmonetary.

JUDGE CARSON: Okay. So tell me about -- tell me how the rest of them still live after you get paid.

MR. PISTORINO: Right. So one thing we asked for, for example, just the most simple one, I might say, is a declaration that Ms. Smith's CGM qualifies as durable medical

10

equipment under the statute, right. A declaration of that will have a real world effect in that in future claims by Ms. Smith, that would be determined and estop the Secretary from contending otherwise. We also asked -- we have a cause of action saying that with regard to 1682, the Secretary did not comply with Congress' statute in 1395hh, as signed by the President, and subjected to notice and comment.

And what we asked for was a determination that that particular conduct, issuing rulings without complying with notice and comment, is violative of the statute, and I wanted an injunction estopping that. And what the Secretary has contended all along is, first, we as the Secretary, I have the power to violate the laws of Congress, I can act illegally, that's what they argued below, if you look at the appendix, their motion for summary judgment. Assuming I did violate the statute, Court, you have no power to control me. You cannot stop me from acting illegally.

So I think that's going to come right back to your question about what was the effect of yesterday -- I'm sorry, Friday, what's the

11

effect of Friday. It just comes back. Have they ever disclaimed that position? No. That's the position they maintain. And again coming back to what they -- or their goal, it appears to be, is to avoid judicial review of that solely for the purpose of preserving that claim.

So whatever they did on Friday, right, again I know what point I have here is that we keep on calling them rulings, right, 1682-R, the ruling. It's just a letter written by somebody at the department, right. The January 17th letter is just a letter written by a guy, Patrick McConway (ph.), just a letter written by a guy, right, totally illegal, again as it's been found adjudged in the Olson case, bad faith, just flat-out bad faith. And on the basis of that, right, again, for five years, tens of thousands of claims have been denied, hundreds of thousands actually, and tens of thousands of people have been injured.

And so if you just look at the conduct more recently, and candidly, I'm counsel in all of these cases --

JUDGE CARSON: Right.

MR. PISTORINO: Every single case is

12

me. Every single step that they have taken has been an effort to avoid judicial review. So when they get a guy, for example, Mr. Olson and then I win, if they could have, they would have paid all his claims to make sure that he never came back while they continued the bad faith conduct, and that's exactly what Judge Mendoza pointed to.

JUDGE CARSON: But your theory is that they're going to rescind the rescission and -- in other words, they've thrown in the towel through this letter ruling and that your concern is that there is -- as soon as we turn our backs, they're going to rescind that letter ruling and start denying claims again. I mean that's -- is that the path --

MR. PISTORINO: So maybe I'll look at it in three ways. First, first, the whole purpose of these efforts by them is to preserve their ability to do exactly that. So your starting point would be -- again just maybe more globally, normally you just look at it and say from the voluntary cessation perspective at just a high level, when someone tells me they're not going to do it, what's the reason I'm going to

13

trust them, right? Why would I trust them, I think that was a phrase used, whether or not their change of behavior seems genuine, right, and what my point is, across the board here, it's not that it seems genuine.

It's the opposite. You know it was bad faith all the way through. That got you to Friday. Now you go to the voluntary cessation principles under which, of course, the Secretary bears -- I think the phrases are typically the formidable burden, the heavy burden, a stringent standard. The Secretary would bear the burden of establishing all of that. And again just coming back, for example, to this Court's case in College America, another case, two main prongs, first the voluntary --

JUDGE CARSON: That doesn't sound like something we can do on appeal. That sounds like it needs to be argued somewhere else either in the administrative process or maybe back at the district court.

MR. PISTORINO: And at the end of the day, whatever is settled, my point is just it would be the Secretary's burden to establish it and again if you look --

14

JUDGE CARSON: And he hasn't even tried to do it at this point, right?

MR. PISTORINO: Right, right. They haven't tried --

JUDGE CARSON: We'll find out in a few minutes, but since Friday they haven't tried to.

MR. PISTORINO: They haven't tried to. And again what we would say is again from the voluntary cessation, you can trust me kind of things, what you're looking for are indications, bases under which to credit their statements. So normally it's something formal like a legislature takes action and you know that once the legislature takes action, it's going to be really hard to change that, and that's my whole point here.

These "rulings," they're just letters. There's no process. A guy signed a letter in 2017. Tens of thousands of people are injured. On Friday, I guess Ms. Brooks decided she -- they didn't want to show up here like that. She just signs the letter. If this Court were to dismiss the case, or any court, there's just absolutely no reason the next day, you sign the

15

letter and it's not like you say, well, I know that won't happen because they're reasonable. No, you know exactly the opposite, right. So -- and again the other point, again I just had some notes --

JUDGE CARSON: Let me joust with you for a minute about a couple things because what concerns me is there's lots of things up in the air here and a lot of them seem really speculative to me. A lot of the things you say seem to be like concerning what might happen to other people. So I want to make sure we're focused on your client and what you're doing. Because you're not taking the position that you should get an injunction to protect other people, are you? Your position is that you want to go get an injunction so they can't do this to your client going forward, is that right?

MR. PISTORINO: I think actually the technical answer would be both.

JUDGE CARSON: Okay.

MR. PISTORINO: Because again under this, for example, National Mining -- I know I cited cases from this Court, when you're litigating, exactly as we are here, the legality

16

of the conduct, compliance with the statute, it's not just the statute for in this case Ms. Smith. It's for everybody. So our goal obviously just from a high level --

JUDGE CARSON: Right.

MR. PISTORINO: -- this case is about $5,000. No one's going to litigate the case for $5,000 solely. It's very important to Ms. Smith. There are much bigger principles that are driving it here.

JUDGE CARSON: Got it. So I'm just thinking about the district court's remand here. I mean obviously I guess this two-line docket entry was followed up with a judgment.

MR. PISTORINO: No, the two-line was the judgment.

JUDGE CARSON: It was the judgment?

MR. PISTORINO: Yes.

JUDGE CARSON: So the court entered judgment --

MR. PISTORINO: With the two lines.

JUDGE CARSON: -- in favor of you. And so because the government, basically they came in and confessed error?

MR. PISTORINO: The court entered --

17

the Secretary said in so many words --

JUDGE CARSON: Right.

MR. PISTORINO: -- we'll pay your three claims, we'll give you that money, $5,000, as long as the court does not address the illegality or any of the other stuff you say, that settlement offer rejected. The court went with that, said, okay, I'm going to adopt the rejected settlement offer. You say he entered judgment for me.

He entered judgment saying I want them to pay those three claims and everything else I'm silent on. And I'm sorry, I'm staying over my time.

THE CHIEF JUSTICE: We'll continue as long as Judge Carson jousts --

JUDGE CARSON: And I won't joust too long, but I'm just -- I mean it concerns me because now what we're talking about is what they might do going forward. And in the face of -- which sounds speculative to me without further denials. It concerns me that maybe this isn't ripe for a decision because the rest of what you want is based on what might happen in the future.

18

Now, I get what you're saying, look, they're jerking the rug out from under everybody before, they're going to do it again, I don't want to just be right here again arguing the same thing to you and they give us a letter the day before saying they're not going to do it anymore. I get that, but that's sort of what -- I'm just struggling with the idea that maybe we're dealing with a case where what you want is an injunction to prevent what might happen in the future, not that, you know, there's any imminent threat that is going to happen.

MR. PISTORINO: So if I can -- and again I'm very conscious of my time. And very quickly to try to address it, so first -- actually I was just sitting here thinking, at a high level manner, it's so ridiculous, it would be funny except for the tens of thousands of people that have been injured, right, except for the debts, okay, so number one --

JUDGE CARSON: Right.

MR. PISTORINO: I want to come your point about speculative. I think that's a fair thing, although again I know the second prong of voluntary cessation is complete eradication of

19

the effect. And of course, because they've been denying these claims for five years, tens of thousands of people have been dissuaded from even submitting the claims.

JUDGE CARSON: Right.

MR. PISTORINO: So again just from the thing that got submitted at 4:15 on Friday, how would anybody know, right? I mean was there some big publicity campaign that they sent emails -- sent letters to everybody? No. From the public's perspective, it's another secret thing so they wouldn't know. So the second prong they could never show.

In terms of speculative, again their whole thing is have they stopped, have they forsworn the claim so they can issue rulings without complying with notice and comment, 1395? No, they have not. They maintain that they still can and that you all are completely powerless no matter how many people they kill. So is it speculative? Not really when that's the power they claim, right. That's what they're claiming as of today.

So, you know, again you talk about gamesmanship. Hey, something came in at 4:15,

20

you know, two business days before their oral argument and the appeal and you just see the efforts of avoiding judicial review, so time and time again. The TDL, that came about because I had a motion for preliminary injunction pending in the Olson case, and I'd already had it pending. They thought they could knock it off with that -- this because I had already argued against the TDL, and it was obviously clearly improper. I appreciate your time. Thank you.

THE CHIEF JUSTICE: Are you done?

JUDGE CARSON: I'm finished.

THE CHIEF JUSTICE: Counsel, you may be seated then. Okay, let's hear from Mr. Koppel for the Department of Human Services.

MR. KOPPEL: Good afternoon, Your Honors. May it please the Court, I'm Josh Koppel on behalf of the United States.

Plaintiffs sought judicial review of Medicare's denial of three claims for payment. The Secretary confessed error and the district court properly entered judgment for plaintiff, ordering the Secretary to pay the claims.

JUDGE CARSON: Okay. So tell me this. What's the effect of that confession? Was it as

21

represented to me by your opposing counsel was it's these three claims, we'll pay them, but we want nothing to do with any other issue that's on the table?

MR. KOPPEL: The effect of the confession in the district court was that these three claims should have been paid and the Secretary will pay them. Now, the Secretary went beyond that and explained that the reason those claims should have covered in the first instance is that plaintiff obtained supplies for an insulin pump that could also perform the functions of a continuous glucose monitor, and insulin pumps have been considered durable medical equipment covered by Medicare since the mid-1990s.

The Medicare Appeals Council, they failed to consider that and they got this wrong. So all of Ms. Smith's future claims related to her insulin pump should be paid.

JUDGE CARSON: All right. So --

MR. KOPPEL: Now even if she didn't --

JUDGE CARSON: So is it the government's position that they would be -- I mean through some sort of collateral estoppel or

22

issue preclusion from denying this claim going forward in the future as to Smith?

MR. KOPPEL: I don't know that there would necessarily be collateral estoppel based on that confession of error. That would be, you know, certainly for a future court to decide. But the Secretary has in the meantime taken additional action to ensure that these claims of plaintiff and of third parties will not be denied.

The Secretary in November 2020 issued a proposed rule and in December 2021 issued the final rule making clear that adjunctive and therapeutic continuous glucose monitors and insulin pumps that perform the functions of a CGM are durable medical equipment that are to be covered by Medicare. The Secretary -- I'm sorry, the CMS then issued --

JUDGE CARSON: Prospectively.

MR. KOPPEL: That was prospectively. And then CMS took action to apply that rule retroactively as well, first with the technical direction letter. That was the quickest way CMS could address the issue, although it left gaps, for example, Medicare Part C. And so then CMS

23

worked toward this ruling that came out last week, and I want to be clear, this is not a letter signed by some guy. This is a ruling signed by the administrator of the Centers for Medicare and Medicaid Services.

This is a formal statement of coverage. And so last Friday CMS issued this CMS ruling, formally rescinding the 2017 CMS ruling, and making clear that for pending and future claims, regardless of the date of service, all continuous glucose monitors and insulin pumps that perform the functions of a continuous glucose monitor are durable medical equipment and will be covered by Medicare. That moots this case.

JUDGE CARSON: Can that be rescinded tomorrow?

MR. KOPPEL: CMS administrative rulings are not that easily rescinded, I'll say that.

JUDGE CARSON: They could, though --

MR. KOPPEL: In theory, it could be rescinded, but this Court -- and with regards to voluntary cessation, the exception to mootness, we haven't had a chance to really brief this

24

because the issue just arose. But this Court has repeatedly held that the withdrawal or alteration of administrative policies can moot an attack on those policies and that the mere possibility that an agency might rescind amendments to its actions does not align moot controversy.

And I encourage the Court to take a look at Denver Bible Church vs. Polis which was issued this year, Prison Legal News vs. Federal Bureau of Prisons in 2019 and Rio Grande Silvery Minnow vs. Bureau of Reclamation in 2010. All of those cases involved the rescission or alteration of an administrative policy, and this Court held that that rescission or alteration mooted the attack on the policy.

The government is accorded a presumption of good faith and unless there is some evidence that the government is going to rescind the rescission, the Court has held that the rescission or alteration moots the claim.

JUDGE CARSON: There is a history here of steadfast opposition to their statutory theory. We can't ignore that, can we?

MR. KOPPEL: Well, to -- I want to

answer that with -- in two ways. First, I don't think that there is a history of bad faith. Even after some district courts have ruled that continuous glucose monitors are durable medical equipment, CMS did continue to apply the 2017 CMS ruling, as it was entitled to do, with regard to other Medicare beneficiaries or other claims.

Of course, if there had been a Court of Appeals ruling on that issue, CMS would have had a different policy within that circuit. If there had been a Supreme Court ruling, of course that would have been definitive. But CMS was entitled to continue to apply that ruling and continue to test the ruling in court.

In November 2020 CMS reconsidered the issue, you know, in part due to, of course, these repeated holdings by district courts. And the continuous stream of actions since then has been in one direction, so issuing the proposed rule, issuing the final rule, issuing the TDL, issuing this new CMS ruling.

Every action CMS has taken has actually been to move toward covering for all dates of service these continuous glucose

monitors as durable medical equipment. So there's no indication that CMS is going to pull the rug out. Second, even aside from mootness, so even if the voluntary cessation exception does apply, there's at least a question -- or at least two questions. First, one of rightness. There's no -- we don't know for sure what CMS will do with any particular claim until CMS has actually done that. And so a judicial ruling on a future claim is not yet right.

And second, there's a jurisdictional statutory authority issue, which is that a court doesn't have statutory authority, it doesn't have jurisdiction to consider a Medicare claim until it has been presented to the agency. There's no claim, other than the three here, that have already been paid and judgment has been entered and they've already been paid by CMS. No other claim has yet been presented to the agency and certainly has not yet reached the final agency decision.

And so the district court simply doesn't have jurisdiction to consider those future claims.

JUDGE CARSON: Aren't all those future

claims going to be paid under the May 13th ruling?

MR. KOPPEL: They absolutely should be, and that is just an additional reason that there's no -- there's no cause for the district court to issue a decision on the validity of the 2017 CMS ruling. That would be an advisory opinion.

And you know, plaintiff has -- shifts tactics here. Instead of simply seeking a decision on the 2017 CMS ruling, which would be an advisory opinion, now plaintiff seeks an advisory opinion on whether CMS rulings generally can be issued without notice and comment. That's certainly an advisory opinion. It depends --

JUDGE CARSON: The plaintiff -- are you taking the position that claimants still need to appeal their claims up to the MAC for all these pending cases?

MR. KOPPEL: If there is a future claim for coverage of a continuous glucose monitor that is denied, that does need to be appealed to the Medicare Appeals Council. After that, CMS issues a final -- or HHS issues a

final agency decision. Only after that does the statute permit the district court to exercise jurisdiction and provide judicial review.

JUDGE CARSON: I guess my question is different then. Are the administrators, the ALJs and the MAC still going to be relying on 1682-R --

MR. KOPPEL: No.

JUDGE CARSON: -- or is that gone?

MR. KOPPEL: That is gone. The 1682-R has been rescinded.

JUDGE CARSON: So a claim that's pending before the administrator, the ALJ or the MAC basically should be adjudicated immediately in favor of the claimant?

MR. KOPPEL: Yes.

JUDGE CARSON: Are there any exceptions to that? Will this be all glucose monitoring claimants or do -- I might have heard you say that the monitor needed to be connected to another durable medical device. Did I misunderstand that?

MR. KOPPEL: No, the continuous glucose monitor itself is the durable medical equipment. So there are --

JUDGE CARSON: Standing alone, those get covered now under this new policy?

MR. KOPPEL: Yes. Of course, provided that the beneficiary actually has diabetes, you know, and that it's diagnosed and they have to be to using a dedicated continuous glucose monitor, not a phone, like an iPhone, because that has a -- the primary purpose of that is not medical. But the mine run of cases, generally speaking, what we're talking about here, continuous glucose monitors starting immediately are considered durable medical equipment. Those claims will be paid. That's regardless of the date service. And even if a claim has been -- has already been denied, if that claim is still pending, you know, it's on appeal to an ALJ, the latest CMS ruling issued by the administrator makes clear that that claim is to be reopened and paid.

JUDGE CARSON: And I guess this lawyer would know his way around the agency process, but I also have a question on the voluntary cessation. Why doesn't that still need to be resolved somehow, either by this panel or by a district court somewhere? I don't know that

we're in a position to really evaluate that claim yet.

MR. KOPPEL: Yeah. So because voluntary cessation goes to mootness and mootness is a jurisdictional issue, I believe that this Court has an independent duty to make a decision on the mootness question itself. You know, some of those cases that I cited, Denver Bible Church, Prison Legal News, Rio Grande, at least some of those I know that recission and alteration of the administrative policy under attack was issued while the case was on appeal and this Court went ahead and made the decision on mootness itself.

And you know, it is true that the court has stated generally the party arguing in favor of mootness bears the burden to show that the challenged action won't be repeated, but the court has also made clear in those cases that where the challenged action was in an administrative policy that has been rescinded or altered, the burden is not quite so burdensome. And in fact, the burden may even shift to the plaintiff in those cases to show that there is some cause to think that the government will

pull the rug out.

And certainly, you know, there's no cause to think that these are formal rulings, and keep in mind that the CMS ruling applies to a closed set of cases because for dates of service February 28th, 2022 going forward, those cases, those claims are governed by the 2021 final ruling, which went through notice and comment, you know, a very formal rule-making process. That really cannot easily be reversed absent another notice and comment process.

So the CMS ruling applies to a closed set of cases that every day is diminishing, and there is no indication that the CMS administrator for any reason would want to all of a sudden switch policy with regard to that closed and diminishing set of cases. And of course, you know, the CMS administrator cannot reverse the 2021 final rule, you know, so easily. So the idea that the CMS ruling will be reversed again as soon as this Court issues its decision is quite implausible.

JUDGE CARSON: Let me ask you a question. Are you familiar with the plaintiffs' district court actions that are pending?

MR. KOPPEL: Some of them. I'm not as familiar with the ones --

JUDGE CARSON: Okay.

MR. KOPPEL: With all of them.

JUDGE CARSON: Do you know as -- why hasn't the government confessed error in those cases? Why didn't -- when they determined that the three claims in this case should be paid because the interpretation was wrong, why didn't they confess error in those cases too?

MR. KOPPEL: I'm not -- I'm sorry, I can't speak to those.

JUDGE CARSON: Okay.

MR. KOPPEL: I'm not familiar enough with them.

JUDGE CARSON: Let me tell you why I'm asking you.

MR. KOPPEL: Yeah.

JUDGE CARSON: Because doesn't the fact that they would confess error here and not confess error in those cases suggest that it was gamesmanship to confess error here and get this case off the books?

MR. KOPPEL: So, you know, one reason is that the Secretary confessed error here

33

immediately because plaintiff was using not just a stand-alone continuous glucose monitor but an insulin pump that also performs the functions of a continuous glucose monitor, and that's really a different category. Insulin pumps have been durable medical equipment again since the mid-1990s. So that's why the Secretary was able to confess error here, you know, so quickly.

I do expect that with this new CMS ruling, you know, the position may change in those other courts. I'm not sure --

JUDGE CARSON: I don't understand why that's different from counsel's other case. As I understand it, it's the same plaintiff, same equipment, different payments. These just happen to have had a decision and could come up on appeal. Those are still pending with no ruling. And if they're the same and you confess as to three and you don't confess as to the others, I mean doesn't that suggest you're trying to evade review?

MR. KOPPEL: So it's certainly not the same plaintiff, I want to be clear about that. Smith -- this is Smith's only action.

JUDGE CARSON: Okay.

34

MR. KOPPEL: The other claims are other plaintiffs. Those other cases also involve ancillary issues. So, for example, there's a case in the District of Columbia where plaintiffs were trying to seek payment of claims that had not been appealed and where the time to appeal had run. And so there are questions of whether the district court had jurisdiction over those.

I believe that in Olson, some of the issues relate not to whether the claims should have been paid but whether -- what the appropriate relief is, whether injunctive relief should be issued, attorneys' fees, that kind of thing. So I don't -- I don't want to speak to those other cases. I'm not familiar enough with them to speak to them, but I'm not sure it's true that the Secretary continues to not pay -- you know, continues to take the position that continuous glucose monitors are not durable medical equipment.

JUDGE CARSON: Okay.

MR. KOPPEL: And certainly this latest CMS ruling I believe should make clear that, you know, continuous glucose monitors are durable

35

medical equipment going forward, you know, from here on, regardless of the date of service, even for past dates of service.

JUDGE CARSON: Before you sit down, I had a question on the equitable relief. It seems to me that the cases that I've reviewed strongly suggest that 405(g) is a permissible vehicle for some forms of equitable and declaratory relief, and I'm not sure you really denied that or opposed that in your papers. But do you agree that a district court could order in an appropriate case some form of equitable relief, an injunction or a declaratory judgment?

MR. KOPPEL: Califano vs. Yamasaki holds that some form of equitable relief is available. I'm not sure -- and we took the position, although we continue to take the position that setting aside or enjoining a rule to apply -- such that the injunction would require the Secretary to pay future claims that haven't yet been presented --

JUDGE CARSON: Well, that's a merits question.

MR. KOPPEL: Right.

JUDGE CARSON: I'm talking about the

36

broader judicial power question.

MR. KOPPEL: There is some set of equitable remedies that are available. You know, Califano vs. Yamasaki addressed equitable powers to ensure the pending -- that the pending -- the status quo remains pending resolution of litigation or to protect the interests of the absent class members. So certainly those kinds of equitable powers are available. You know, here --

JUDGE CARSON: I think that's a recent DC circuit case, Parzakansky (ph.), that also suggests equitable relief was proper in some circumstances.

MR. KOPPEL: Exactly. But as that case makes clear, and I think that's a very -- quite analogous case. Just because Califano held that equitable remedies are available, it doesn't mean -- it didn't determine when they're available. And where the plaintiff, and this is what Parzakansky held, where the plaintiff seeks equitable relief to decide future claims that haven't been yet presented to the agency and haven't yet reached a final agency decision, those equitable remedies are not available.

37

JUDGE CARSON: But why wouldn't here a declaration that the Secretary's interpretation of the statute is wrong, why wouldn't that -- that just seems like a pretty garden variety remedy that, you know, actually to the extent it applies to, you know, thousands of other claimants would be a good thing because it would resolve the legal authority of the agency. You know, maybe the district court issues a declaratory judgment that's appealed to a circuit, you know, or whatever. But that just seems like kind of something that happens every day in the district courts.

MR. KOPPEL: So in the appropriate case, a court can rule on the validity of a CMS ruling. So I mean there's a number of reasons that this district court couldn't and shouldn't going forward, you know, mootness, the 2017 CMS ruling has been rescinded, the plaintiff's claim wasn't properly decided under the 2017 CMS ruling because that ruling didn't apply to insulin pumps. The appeals council erred in applying the 2017 CMS ruling to plaintiff's claim.

But in a case where, you know, HHS

38

applies a CMS ruling to a claim properly and the Secretary confess -- you know, contests or continues to contest the claim before the district court, the district court can consider the validity of the CMS ruling and if it's invalid, that would be a basis to reverse and remand.

The question that the district court didn't get to, and I don't think this Court needs to, is whether the district court can then issue an injunction saying this CMS ruling also shouldn't be applied in future cases because that decides claims that haven't yet been presented to the agency.

But in terms of deciding for purposes of a present live claim for Medicare coverage whether a CMS ruling is properly issued, absolutely the circuit court can do that, and that allows the Court of Appeals to rule on the issue, potentially the Supreme Court, and we certainly don't take issue with that.

In this case, however, not only is the issue moot, but for all the reasons we've explained, even if the issue were not moot, the decision of the district court should be

39

affirmed. Thank you.

THE CHIEF JUSTICE: Counsel, we understand both your arguments. Thank you very much for clarifying the situation for us. You're excused. Your case shall be submitted, and the Court will be in recess until 9 o'clock tomorrow morning, I believe.

40

UNITED STATE COURT OF APPEALS

FOR THE TENTH CIRCUIT

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

LINDA P. SMITH

Plaintiff-Appellant

-vs- Case 22-4012

XAVIER BECERRA, in his capacity as Secretary of the United States Department of Health and Human Services,

Defendant-Appellee.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

C E R T I F I C A T E

I, LISA A. CREERON, do hereby certify I took in shorthand the proceedings held in the above-entitled matter on the 17th day of May, 2022, and that the attached is a true and correct transcription of the proceedings so taken, to the best of my ability.

In witness whereof, I have hereunto set my hand and affixed my seal of office this 21st day of May, 2022.

____________________________________
Notary Public, State of Wisconsin
My Commission Expires: 1/30/2025

41

<Dates>
**1/30/2025** 41:35.
**December 2021** 23:12.
**February 28th, 2022** 32:6.
**January 17th** 12:11.
**May 17, 2022** 2:3.
**May, 2022** 41:27, 41:31.
**November 2020** 23:11, 26:16.
**$5,000** 17:8, 18:4.
**$5,000.** 17:7.
**-vs-** 1:11, 41:11.
.
.
<1>.
**1** 8:14.
**1395** 20:17.
**1395h** 5:3.
**1395hh** 11:8.
**13th** 4:4, 4:8, 28:1.
**1682** 4:21, 11:7.
**1682-R** 3:10, 3:18, 7:11, 12:9, 29:7, 29:10.
**17th** 41:27.
.
.
<2>.
**2010.** 25:12.
**2017** 24:8, 26:5, 28:7, 28:11, 38:18, 38:20, 38:23.
**2017.** 15:20.
**2019** 25:11.
**2021** 32:7, 32:19.
**21st** 41:31.
**22-4012** 1:11, 3:2, 41:11.
**27** 7:11.
.
.
<4>.
**405(g** 36:7.
**4:15** 4:10, 20:7, 20:25.
.
.
<9>.
**9** 40:6.
.
.
<A>.
**A.** 41:25.
**ability** 13:20, 41:29.
**able** 34:7.
**above-entitled** 2:2, 41:26.
**absent** 32:11, 37:8.
**absolutely** 15:25, 28:3, 39:18.
**accorded** 25:17.
**across** 4:15, 5:23, 6:6, 14:4.
**Act** 5:5, 11:17.
**acting** 11:22.
**action** 2:2, 3:17, 3:24, 10:17, 11:6, 15:14, 15:15, 23:8, 23:21, 26:23, 31:18, 31:20, 34:24.
**actions** 25:6, 26:19, 32:25.
**actually** 5:21, 12:19, 16:19, 19:16, 26:24, 27:9, 30:4, 38:5.
**additional** 23:8, 28:4.
**address** 3:16, 18:5, 19:15, 23:24.
**addressed** 37:4.
**adjudged** 12:15.
**adjudicated** 29:14.
**adjunctive** 23:13.
**administrative** 14:20, 24:18, 25:3, 25:14, 31:11, 31:21.
**administrator** 24:4, 29:13, 30:17, 32:15, 32:18.
**administrators** 29:5.
**admitted** 5:24, 6:12.
**admitting** 6:6.
**adopt** 18:8.
**advisory** 28:7, 28:12, 28:13, 28:15.
**affirmed** 40:1.
**affixed** 41:31.
**afforded** 3:14.
**afternoon** 5:20, 21:16.
**agency** 5:8, 25:5, 27:15, 27:20, 27:21, 29:1, 30:21, 37:23, 37:24, 38:8, 39:14.
**agree** 8:8, 10:15, 36:11.
**agreed** 7:25.
**agreement** 3:13.
**ahead** 31:13.
**air** 16:9.
**align** 25:6.
**ALJ** 29:13, 30:16.
**Aljs** 29:6.
**ALLISON** 1:29.
**allow** 7:3.
**allowed** 3:11.
**allows** 39:19.
**alone** 30:1.
**already** 9:10, 21:6, 21:8, 27:17, 27:18, 30:15.
**alteration** 25:3, 25:14, 25:15, 25:21, 31:11.
**altered** 31:22.
**alternative** 3:25.
**although** 19:24, 23:24, 36:17.
**amendments** 25:6.
**America** 14:15.
**analogous** 37:17.
**ancillary** 35:3.
**answer** 4:12, 16:20, 26:1.
**anybody** 20:8.
**apologize** 6:20.
**appeal** 3:9, 8:23, 14:18, 21:2, 28:19, 30:16, 31:12, 34:17, 35:7.
**appealed** 10:10, 28:24, 35:6, 38:10.
**APPEALS** 1:3, 22:17, 26:10, 28:24, 38:22, 39:19, 41:1.
**appearing** 2:9, 2:14.
**appears** 12:4.
**appendix** 11:19.
**applied** 39:12.
**applies** 32:4, 32:12, 38:6, 39:1.
**apply** 23:21, 26:5, 26:14, 27:5, 36:19, 38:21.
**applying** 38:23.
**appreciate** 21:10.
**appropriate** 35:13, 36:12, 38:14.
**argued** 11:18, 14:19, 21:8.
**arguing** 19:4, 31:16.
**argument** 21:2.
**ARGUMENTS** 1:25, 2:1, 40:3.
**arose** 25:1.
**around** 30:21.
**aside** 27:3, 36:18.
**aspect** 7:7, 7:12, 8:16.
**Assuming** 11:20.
**attached** 41:28.
**attack** 25:4, 25:16, 31:12.
**Attorney** 2:8, 2:13.
**attorneys** 35:14.
**audio** 2:2.
**authority** 27:12,

42

27:13, 38:8.
**available** 36:16, 37:3, 37:10, 37:18, 37:20, 37:25.
**avoid** 3:12, 12:5, 13:2.
**avoiding** 21:3.
.
.
<B>.
**back** 8:1, 11:24, 12:1, 12:4, 13:6, 14:14, 14:20.
**backs** 13:14.
**bad** 7:10, 12:15, 12:16, 13:6, 14:7, 26:2.
**based** 7:19, 18:24, 23:4.
**bases** 15:12.
**basically** 4:4, 7:9, 9:5, 17:23, 29:14.
**basis** 7:4, 12:17, 39:6.
**bear** 14:12.
**bears** 14:10, 31:17.
**BECERRA** 1:13, 3:2, 41:13.
**behalf** 2:9, 2:14, 3:5, 21:18.
**behavior** 14:3.
**believe** 31:5, 35:10, 35:24, 40:7.
**below** 5:5, 11:18.
**beneficiaries** 26:7.
**beneficiary** 30:4.
**best** 5:17, 41:29.
**beyond** 22:9.
**Bible** 25:9, 31:9.
**big** 20:9.
**bigger** 17:9.
**blood** 5:25.
**board** 4:15, 5:24, 6:6, 14:4.
**books** 33:23.
**brief** 24:25.
**broader** 37:1.
**Brooks** 15:21.
**burden** 14:11, 14:12, 14:24, 31:17, 31:22, 31:23.
**burdensome** 31:22.
**Bureau** 25:11, 25:12.
**business** 21:1.
.
.
<C>.
**C.** 2:7, 23:25.
**Califano** 36:14, 37:4, 37:17.
**call** 3:1.
**calling** 12:9.
**campaign** 20:9.
**candidly** 12:22.
**capacity** 1:13, 41:13.
**Case** 3:2, 4:25, 6:9, 6:14, 6:21, 7:4, 8:11, 9:14, 9:17, 12:15, 12:25, 14:14, 14:15, 15:24, 17:2, 17:6, 17:7, 19:9, 21:6, 24:15, 31:12, 33:8, 33:23, 34:13, 35:4, 36:12, 37:12, 37:16, 37:17, 38:15, 38:25, 39:22, 40:5, 41:11.
**cases** 12:23, 16:24, 25:13, 28:20, 30:9, 31:8, 31:19, 31:24, 32:5, 32:7, 32:13, 32:17, 33:7, 33:10, 33:21, 35:2, 35:16, 36:6, 39:12.
**category** 34:5.
**cause** 11:6, 28:5, 31:25, 32:3.
**causes** 3:16, 3:24, 10:16.
**ceasing** 6:24.
**Centers** 24:4.
**certainly** 6:15, 23:6, 27:20, 28:15, 32:2, 34:22, 35:23, 37:9, 39:21.
**certify** 41:25.
**cessation** 6:23, 13:23, 14:8, 15:10, 19:25, 24:24, 27:4, 30:23, 31:4.
**CGM** 8:12, 10:25, 23:16.
**Cgms** 5:25.
**challenged** 31:18, 31:20.
**chance** 24:25.
**change** 14:3, 15:16, 34:10.
**changed** 8:6.
**CHIEF** 1:28, 3:1, 18:15, 21:11, 21:13, 40:2.
**Church** 25:9, 31:9.
**CIRCUIT** 1:4, 26:11, 37:12, 38:11, 39:18, 41:3.
**circumstances** 37:14.
**cited** 7:16, 16:24, 31:8.
**citing** 6:21.
**claim** 3:7, 12:6, 20:16, 20:22, 23:1, 25:21, 27:8, 27:10, 27:14, 27:16, 27:19, 28:22, 29:12, 30:14, 30:15, 30:18, 31:2, 38:19, 38:24, 39:1, 39:3, 39:16.
**claimant** 29:15.
**claimants** 28:18, 29:19, 38:7.
**claiming** 20:23.
**clarifying** 40:4.
**class** 37:8.
**clear** 9:12, 23:13, 24:2, 24:9, 30:18, 31:19, 34:23, 35:24, 37:16.
**clearly** 21:9.
**client** 16:13, 16:18.
**closed** 32:5, 32:12, 32:17.
**CMS** 23:18, 23:21, 23:23, 23:25, 24:7, 24:8, 24:18, 26:5, 26:6, 26:10, 26:13, 26:16, 26:22, 26:23, 27:2, 27:7, 27:8, 27:19, 28:7, 28:11, 28:13, 28:25, 30:17, 32:4, 32:12, 32:14, 32:18, 32:20, 34:9, 35:24, 38:15, 38:18, 38:20, 38:23, 39:1, 39:5, 39:11, 39:17.
**collateral** 22:25, 23:4.
**College** 14:15.
**Columbia** 35:4.
**comes** 12:1.
**coming** 6:16, 12:3, 14:14.
**comment** 4:23, 5:4, 11:9, 11:13, 20:17, 28:15, 32:9, 32:11.
**Commission** 41:35.
**complete** 3:14, 19:25.
**completely** 20:19.
**compliance** 17:1.
**comply** 11:7.
**complying** 4:23, 11:12, 20:17.
**components** 10:1.
**concern** 13:12.
**concerned** 8:9, 8:11.
**concerning** 16:11.
**concerns** 7:17, 16:8, 18:18, 18:22.
**concluded** 3:13.

43

**conduct** 6:8, 6:24, 7:3, 7:10, 11:11, 12:21, 13:7, 17:1.
**confess** 33:10, 33:20, 33:21, 33:22, 34:8, 34:18, 34:19, 39:2.
**confessed** 8:2, 17:24, 21:21, 33:6, 33:25.
**confessing** 8:7.
**confession** 21:25, 22:6, 23:5.
**congratulations** 6:4.
**Congress** 11:8, 11:17.
**connected** 29:20.
**conscious** 19:14.
**consider** 3:22, 22:18, 27:14, 27:23, 39:4.
**considered** 22:14, 30:12.
**contended** 11:15.
**contending** 11:5.
**contends** 5:2, 5:7.
**contest** 39:3.
**contests** 39:2.
**continue** 7:3, 18:15, 26:5, 26:14, 26:15, 36:17.
**continued** 8:15, 13:6.
**continues** 35:18, 35:19, 39:3.
**continuous** 22:13, 23:14, 24:11, 24:13, 26:4, 26:19, 26:25, 28:22, 29:23, 30:6, 30:11, 34:2, 34:4, 35:20, 35:25.
**control** 11:21.
**controversy** 25:7.
**Correct** 8:21, 9:2, 41:28.
**Council** 22:17, 28:24, 38:22.
**Counsel** 12:22, 21:13, 22:1, 34:13, 40:2.
**couple** 16:7.
**course** 6:23, 7:2, 7:8, 14:9, 20:1, 26:9, 26:12, 26:17, 30:3, 32:18.
**courts** 5:7, 26:3, 26:18, 34:11, 38:13.
**coverage** 3:7, 24:7, 28:22, 39:16.
**covered** 22:10, 22:15, 23:17, 24:14, 30:2.
**covering** 26:24.
**credit** 15:12.
**CREERON** 41:25.
**cure** 8:14.
**currently** 7:24.
.
.
<D>.
**damages** 8:3.
**date** 24:10, 30:14, 36:2.
**dates** 26:25, 32:5, 36:3.
**day** 7:13, 14:23, 15:25, 19:6, 32:13, 38:13, 41:27, 41:31.
**days** 21:1.
**DC** 37:12.
**dealing** 19:9.
**debts** 19:20.
**decide** 23:6, 37:22.
**decided** 15:21, 38:20.
**decides** 39:13.
**deciding** 39:15.
**decision** 7:24, 18:23, 27:21, 28:6, 28:11, 29:1, 31:7, 31:13, 32:22, 34:16, 37:24, 39:25.
**declaration** 10:24, 11:2, 38:2.
**declaratory** 36:9, 36:13, 38:10.
**declare** 5:11.
**dedicated** 30:6.
**Defendant-appellee** 1:19, 2:15, 41:17.
**definitive** 26:13.
**denial** 21:20.
**denials** 8:24, 18:22.
**denied** 10:10, 12:18, 23:10, 28:23, 30:15, 36:10.
**Denver** 25:9, 31:8.
**denying** 13:15, 20:2, 23:1.
**Department** 1:15, 12:11, 21:15, 41:15.
**depends** 28:16.
**deprive** 6:25.
**determination** 4:21, 11:11.
**determine** 5:15, 37:19.
**determined** 11:4, 33:7.
**device** 29:21.
**diabetes** 8:14, 30:4.
**diagnosed** 30:5.
**different** 9:12, 10:1, 10:17, 26:11, 29:5, 34:5, 34:13, 34:15.
**diminishing** 32:13, 32:17.
**direction** 6:7, 23:23, 26:20.
**disclaimed** 12:2.
**dismiss** 15:24.
**dissuaded** 20:3.
**District** 3:8, 3:10, 3:19, 5:7, 6:15, 8:20, 9:7, 14:21, 17:12, 21:21, 22:6, 26:3, 26:18, 27:22, 28:5, 29:2, 30:25, 32:25, 35:4, 35:8, 36:11, 38:9, 38:13, 38:17, 39:4, 39:8, 39:10, 39:25.
**docket** 3:20, 17:13.
**doctrine** 5:16.
**document** 4:9, 5:23.
**doing** 9:7, 16:13.
**done** 21:11, 27:9.
**down** 6:22, 36:4.
**driving** 17:10.
**due** 26:17.
**durable** 8:12, 10:25, 22:14, 23:16, 24:13, 26:4, 27:1, 29:21, 29:24, 30:12, 34:6, 35:20, 35:25.
**duty** 31:6.
.
.
<E>.
**easily** 24:19, 32:10, 32:20.
**effect** 6:17, 11:3, 11:24, 12:1, 20:1, 21:25, 22:5.
**effort** 13:2.
**efforts** 13:19, 21:3.
**EID** 1:29.
**either** 14:19, 30:24.
**emails** 20:10.
**enacting** 5:8.
**encourage** 25:8.
**end** 7:12, 14:22.
**enforcement** 4:20.
**enforcing** 9:5.
**enjoin** 9:4.
**enjoining** 9:10, 36:18.
**enough** 33:14, 35:16.

44

ensure 23:8, 37:5.
entered 17:19, 17:25, 18:9, 18:11, 21:22, 27:18.
entering 3:20.
entire 4:24, 4:25, 5:25.
entitled 26:6, 26:14.
entry 3:20, 17:14.
equipment 8:13, 11:1, 22:15, 23:16, 24:14, 26:5, 27:1, 29:25, 30:12, 34:6, 34:15, 35:21, 36:1.
equitable 36:5, 36:8, 36:12, 36:15, 37:3, 37:4, 37:9, 37:13, 37:18, 37:22, 37:25.
eradication 19:25.
erred 3:11, 38:22.
error 8:2, 17:24, 21:21, 23:5, 33:6, 33:10, 33:20, 33:21, 33:22, 33:25, 34:8.
essentially 5:22.
establish 14:24.
establishing 14:13.
estop 11:4.
estoppel 22:25, 23:4.
estopping 11:14.
evade 34:21.
evaluate 31:1.
everybody 17:3, 19:2, 20:10.
everything 6:12, 6:13, 9:8, 18:12.
evidence 25:19.
Exactly 13:7, 13:20, 16:3, 16:25, 37:15.
example 6:6, 7:19, 10:23, 13:3, 14:14, 16:23, 23:25, 35:3.
except 19:18, 19:19.
exception 24:24, 27:4.
exceptions 29:18.
excused 40:5.
exercise 29:2.
expect 34:9.
Expires 41:35.
explained 22:9, 39:24.
extent 38:5.
.
<F>.
face 18:20.
fact 5:25, 31:23, 33:20.
failed 22:18.
failing 3:21.
fair 19:23.
faith 7:10, 12:16, 13:6, 14:7, 25:18, 26:2.
familiar 32:24, 33:2, 33:14, 35:16.
far 7:23.
favor 17:22, 29:15, 31:17.
Federal 25:10.
fees 35:14.
few 5:21, 15:5.
final 23:13, 26:21, 27:21, 28:25, 29:1, 32:8, 32:19, 37:24.
finally 3:8.
find 15:5.
finding 8:12.
findings 3:22.
finished 21:12.
First 3:8, 4:12, 4:19, 6:19, 11:15, 13:18, 14:16, 19:15, 22:10, 23:22, 26:1, 27:6.
five 3:6, 12:17, 20:2.
five-year 4:25.
flat-out 12:16.
focus 9:17.
focused 16:13.
followed 17:14.
form 36:12, 36:15.
formal 15:13, 24:6, 32:3, 32:9.
formally 24:8.
formidable 14:11.
forms 10:17, 36:8.
forsworn 20:16.
forward 7:4, 8:16, 16:18, 18:20, 23:2, 32:6, 36:1, 38:18.
found 12:15.
frankly 5:13.
Friday 4:10, 5:20, 6:11, 6:17, 11:25, 12:1, 12:7, 14:8, 15:6, 15:21, 20:7, 24:7.
functions 22:13, 23:15, 24:12, 34:3.
funny 19:18.
future 11:3, 18:25, 19:11, 22:19, 23:2, 23:6, 24:10, 27:10, 27:24, 27:25, 28:21, 36:20, 37:22, 39:12.
.
.
<G>.
gamesmanship 20:25, 33:22.
gaps 23:24.
garden 38:4.
generally 6:18, 28:14, 30:9, 31:16.
genuine 14:3, 14:5.
get-go 7:10.
getting 10:6, 10:8.
give 18:4, 19:5.
gives 9:5.
giving 4:15.
globally 13:22.
glucose 6:1, 22:13, 23:14, 24:11, 24:13, 26:4, 26:25, 28:22, 29:18, 29:24, 30:6, 30:11, 34:2, 34:4, 35:20, 35:25.
goal 12:4, 17:3.
governed 32:7.
government 17:23, 22:24, 25:17, 25:19, 31:25, 33:6.
Grande 25:11, 31:9.
Grant 6:21.
granting 4:4.
guess 15:21, 17:13, 29:4, 30:20.
guy 12:12, 12:14, 13:3, 15:19, 24:3.
guys 5:19.
.
.
<H>.
hand 41:30.
happen 16:2, 16:11, 18:24, 19:10, 19:12, 34:16.
happens 38:12.
hard 15:16.
Health 1:15, 41:15.
hear 21:14.
heard 29:19.
heavy 14:11.
held 2:3, 25:2, 25:15, 25:20, 37:18, 37:21, 41:26.
hereby 41:25.
hereunto 41:30.
HHS 28:25,
45

38:25.
high 13:24, 17:4, 19:17.
history 25:22, 26:2.
holdings 26:18.
holds 36:15.
Honestly 4:13, 5:14.
Honor 3:4, 6:5.
Honors 21:17.
Human 21:15, 41:15.
hundreds 12:19.
.
.
<I>.
idea 19:8, 32:20.
ignore 25:24.
ignores 3:23.
illegal 6:24, 7:3, 12:14.
illegality 18:6.
illegally 5:8, 11:17, 11:22.
immediately 29:14, 30:11, 34:1.
imminent 19:12.
implausible 32:22.
important 7:7, 17:8.
improper 21:10.
including 3:17, 4:2.
independent 31:6.
indication 27:2, 32:14.
indications 15:11.
injunction 4:2, 4:20, 7:1, 9:4, 10:11, 11:14, 16:15, 16:17, 19:10, 21:5, 36:13, 36:19, 39:11.
injunctive 3:17, 35:13.
injured 12:20, 15:20, 19:19.
instance 22:11.
Instead 4:1, 28:10.
Insulin 22:12, 22:14, 22:20, 23:15, 24:12, 34:3, 34:5, 38:22.
interesting 5:22.
interests 37:8.
interpret 4:3, 4:14.
interpretation 33:9, 38:2.
interrupt 7:23.
invalid 39:6.
invalidate 3:10.
involve 35:3.
involved 25:13.
iphone 30:7.
issue 5:3, 7:1, 9:13, 9:14, 9:16, 20:16, 22:3, 23:1, 23:24, 25:1, 26:10, 26:17, 27:12, 28:6, 31:5, 39:11, 39:20, 39:21, 39:23, 39:24.
issued 23:11, 23:12, 23:18, 24:7, 25:10, 28:14, 30:17, 31:12, 35:14, 39:17.
issues 28:25, 32:21, 35:3, 35:11, 38:9.
issuing 4:22, 11:12, 26:20, 26:21, 26:22.
itself 29:24, 31:7, 31:14.
.
.
<J>.
James 2:7, 3:5.
jerk 8:4.
jerking 19:2.
JOEL 1:30.
Josh 21:18.
JOSHUA 2:12.
joust 16:6, 18:17.
jousts 18:16.
judgment 3:20, 11:19, 17:14, 17:16, 17:17, 17:20, 18:10, 18:11, 21:22, 27:17, 36:13, 38:10.
judicial 3:12, 12:5, 13:2, 21:3, 21:19, 27:9, 29:3, 37:1.
jurisdiction 6:25, 27:14, 27:23, 29:3, 35:8.
jurisdictional 27:11, 31:5.
JUSTICE 1:28, 3:1, 18:15, 21:11, 21:13, 40:2.
justiciable 5:15.
.
.
<K>.
keep 10:14, 12:9, 32:4.
kill 20:20.
kind 5:16, 15:10, 35:14, 38:12.
kinds 37:9.
knock 21:7.
KOPPEL 2:12, 21:15, 21:16, 21:18, 22:5, 22:22, 23:3, 23:20, 24:18, 24:22, 25:25, 28:3, 28:21, 29:8, 29:10, 29:16, 29:23, 30:3, 31:3, 33:1, 33:4, 33:11, 33:14, 33:18, 33:24, 34:22, 35:1, 35:23, 36:14, 36:24, 37:2, 37:15, 38:14.
.
.
<L>.
last 3:1, 24:1, 24:7.
late 6:20.
latest 30:17, 35:23.
Law 2:8, 2:13, 3:11, 4:24.
laws 11:17.
lawyer 30:20.
least 27:5, 27:6, 31:10.
left 3:15, 10:13, 23:24.
Legal 25:10, 31:9, 38:8.
legality 16:25.
legislature 15:14, 15:15.
letter 6:7, 6:17, 6:20, 12:10, 12:12, 12:13, 13:12, 13:14, 15:19, 15:23, 16:1, 19:5, 23:23, 24:3.
letters 15:18, 20:10.
level 13:24, 17:4, 19:17.
LINDA 1:7, 41:7.
lines 17:21.
LISA 41:25.
litigate 17:7.
litigated 5:1.
litigating 16:25.
litigation 37:7.
live 10:20, 39:16.
long 18:5, 18:16, 18:18.
look 11:18, 12:21, 13:17, 13:22, 14:25, 19:1, 25:9.
looking 15:11.
lot 16:9, 16:10.
lots 16:8.
.
.
<M>.
MAC 28:19, 29:6, 29:14.
main 6:19, 14:15.
maintain 12:3,
46

20:18.
manner 19:17.
matter 3:11, 5:1, 20:20, 41:27.
Mcconway 12:13.
mean 4:8, 4:13, 7:22, 9:8, 9:20, 10:5, 13:15, 17:13, 18:18, 20:8, 22:25, 34:20, 37:19, 38:16.
meantime 23:7.
Medicaid 24:5.
medical 8:13, 10:25, 22:15, 23:16, 24:13, 26:4, 27:1, 29:21, 29:24, 30:9, 30:12, 34:6, 35:21, 36:1.
Medicare 3:7, 5:4, 21:20, 22:15, 22:17, 23:17, 23:25, 24:5, 24:14, 26:7, 27:14, 28:24, 39:16.
members 37:8.
Mendoza 6:9, 7:13, 7:15, 13:7.
mentioned 6:7.
mere 6:24, 25:4.
merits 36:22.
mid-1990s 22:16, 34:7.
mind 8:6, 32:4.
mine 30:9.
Mining 16:23.
Minnow 25:12.
minute 16:7.
minutes 15:6.
misunderstand 29:22.
moment 9:18.
monetary 3:25.
money 18:4.
monitor 22:13, 24:13, 28:23, 29:20, 29:24, 30:7, 34:2, 34:4.
monitoring 29:19.
monitors 6:1, 23:14, 24:11, 26:4, 27:1, 30:11, 35:20, 35:25.
moot 5:17, 6:15, 7:19, 25:3, 25:6, 39:23, 39:24.
mooted 25:16.
mootness 5:16, 24:24, 27:3, 31:4, 31:5, 31:7, 31:14, 31:17, 38:18.
moots 24:15, 25:21.
morning 40:7.
motion 11:19, 21:5.
move 26:24.
Ms 3:7, 3:14, 3:16, 3:21, 3:24, 4:13, 8:9, 10:25, 11:3, 15:21, 17:3, 17:9, 22:19.
multiple 10:16.
.
.
<N>.
National 16:23.
Nearly 3:5.
necessarily 23:4.
need 5:14, 28:19, 28:23, 30:23.
needed 29:20.
needs 14:19, 39:10.
new 26:22, 30:2, 34:9.
News 25:10, 31:9.
Next 7:6, 15:25.
night 6:21.
No. 1:11, 4:13, 4:16, 5:12, 12:2, 20:10.
nobody 9:20.
nonmonetary 3:23, 4:1, 9:25, 10:4, 10:18.
normally 13:22, 15:13.
Notary 41:34.
notes 16:5.
nothing 22:3.
notice 4:23, 5:3, 11:9, 11:12, 20:17, 28:14, 32:8, 32:11.
number 4:21, 7:1, 8:11, 19:20, 38:16.
.
.
<O>.
o'clock 40:6.
obtained 22:11.
obviously 5:19, 17:4, 17:13, 21:9.
offer 18:7, 18:9.
office 41:31.
Okay 10:3, 10:19, 16:21, 18:8, 19:20, 21:14, 21:24, 33:3, 33:13, 34:25, 35:22.
Olson 6:9, 12:15, 13:3, 21:6, 35:10.
once 15:14.
one 7:1, 7:12, 7:18, 8:11, 8:16, 10:22, 10:24, 17:7, 19:20, 26:20, 27:6, 33:24.
one. 4:21.
ones 10:18, 33:2.
opinion 28:8, 28:12, 28:13, 28:15.
opposed 36:10.
opposing 22:1.
opposite 14:6, 16:3.
opposition 25:23.
ORAL 1:25, 2:1, 21:1.
order 36:11.
ordering 21:23.
others 34:20.
otherwise 11:5.
outcome 4:5.
.
.
<P>.
P. 1:7, 41:7.
paid 8:10, 10:21, 13:5, 22:7, 22:20, 27:17, 27:18, 28:1, 30:13, 30:19, 33:8, 35:12.
PANEL 1:28, 30:24.
papers 5:6, 5:19, 36:10.
Part 8:23, 23:25, 26:17.
particular 11:11, 27:8.
parties 23:9.
party 31:16.
Parzakansky 37:12, 37:21.
past 36:3.
path 13:16.
Patrick 12:13.
pay 3:14, 8:5, 18:3, 18:12, 21:23, 22:2, 22:8, 35:18, 36:20.
payment 3:21, 9:24, 10:7, 10:10, 10:16, 21:20, 35:5.
payments 34:15.
pending 4:6, 4:17, 8:19, 8:25, 9:6, 21:5, 21:7, 24:9, 28:20, 29:13, 30:16, 32:25, 34:17, 37:5, 37:6.
people 12:20, 15:20, 16:12, 16:16, 19:19, 20:3, 20:20.
perform 22:12, 23:15, 24:12.
performs 34:3.
period 5:1.
permissible 36:7.
47

permit 29:2.
perspective 13:23, 20:11.
ph. 12:13, 37:12.
phone 30:7.
phrase 14:2.
phrases 14:10.
PISTORINO 2:7, 3:3, 3:4, 3:5, 4:7, 4:12, 4:16, 4:19, 5:12, 5:18, 6:5, 8:8, 8:21, 9:1, 9:11, 9:16, 9:23, 10:8, 10:14, 10:22, 12:25, 13:17, 14:22, 15:3, 15:8, 16:19, 16:22, 17:6, 17:15, 17:18, 17:21, 17:25, 18:3, 19:13, 19:22, 20:6.
plaintiff 21:22, 22:11, 23:9, 28:9, 28:12, 28:17, 31:24, 34:1, 34:14, 34:23, 37:20, 37:21, 38:19, 38:23.
Plaintiff-appellant 1:9, 2:10, 41:9.
Plaintiffs 21:19, 32:24, 35:2, 35:5.
play 9:22.
please 21:17.
point 12:8, 13:21, 14:4, 14:23, 15:2, 15:17, 16:4, 19:23.
point. 9:20.
pointed 13:8.
pointing 6:23.
points 5:21, 6:19, 6:23.
policies 25:3, 25:4.
policy 25:14, 25:16, 26:11, 30:2, 31:11, 31:21, 32:16.
Polis 25:9.
position 12:2, 12:3, 16:14, 16:16, 22:24, 28:18, 31:1, 34:10, 35:19, 36:17, 36:18.
possibility 25:5.
potentially 6:17, 39:20.
power 3:9, 3:15, 5:2, 5:8, 6:16, 11:16, 11:21, 20:22, 37:1.
powerless 20:20.
powers 37:5, 37:9.
preclusion 23:1.
preliminary 21:5.
present 39:16.
presented 27:15, 27:19, 36:21, 37:23, 39:14.
presenting 3:6.
preserve 13:19.
preserving 12:6.
President 11:9.
presumption 25:18.
pretty 38:4.
prevent 19:10.
primary 30:8.
principles 14:9, 17:9.
Prison 25:10, 31:9.
Prisons 25:11.
proceedings 2:3, 41:26, 41:29.
process 3:9, 4:22, 7:11, 14:20, 15:19, 30:21, 32:10, 32:11.
prong 19:24, 20:13.
prongs 14:16.
proper 37:13.
properly 9:9, 21:22, 38:20, 39:1, 39:17.
proposed 23:12, 26:20.
Prospectively 23:19, 23:20.
protect 16:15, 37:7.
provide 29:3.
provided 30:3.
provision 5:4.
Public 20:11, 41:34.
publicity 20:9.
pull 27:2, 32:1.
pump 22:12, 22:20, 34:3.
pumps 22:14, 23:15, 24:12, 34:5, 38:22.
purpose 12:6, 13:19, 30:8.
purposes 39:15.
.
.
<Q>.
qualifies 10:25.
question 11:24, 27:5, 29:4, 30:22, 31:7, 32:24, 36:5, 36:23, 37:1, 39:8.
questions 27:6, 35:7.
quickest 23:23.
quickly 5:20, 19:15, 34:8.
quite 5:22, 31:22, 32:22, 37:17.
quo 37:6.
.
.
<R>.
reached 3:8, 27:20, 37:24.
read 5:23.
real 11:2.
really 4:25, 15:16, 16:9, 20:21, 24:25, 31:1, 32:10, 34:4, 36:9.
reason 7:18, 13:25, 15:25, 22:9, 28:4, 32:15, 33:24.
reasonable 16:2.
reasons 38:16, 39:23.
recent 37:11.
recently 12:22.
recess 40:6.
recission 31:10.
Reclamation 25:12.
reconsidered 26:16.
RECORDED 1:25.
recording 2:2.
recovery 3:25.
referring 4:9.
regard 9:23, 11:6, 26:7, 32:16.
regardless 24:10, 30:13, 36:2.
regards 24:23.
rejected 18:7, 18:9.
relate 35:11.
related 22:19.
relief 3:15, 3:18, 3:23, 4:1, 8:23, 8:24, 10:1, 10:4, 10:17, 35:13, 36:5, 36:9, 36:13, 36:15, 37:13, 37:22.
relying 29:6.
remains 37:6.
remand 17:12, 39:7.
remanded 8:2.
remanding 3:20.
remedies 37:3, 37:18, 37:25.
remedy 38:5.
reopened 30:18.
repeated 26:18, 31:18.
repeatedly 25:2.
represented 22:1.
request 3:17.
require 36:20.
rescind 13:10, 13:14, 25:5,
48

25:20.
**rescinded** 24:16, 24:19, 24:23, 29:11, 31:21, 38:19.
**rescinding** 24:8.
**rescission** 13:10, 25:13, 25:15, 25:20, 25:21.
**resolution** 37:7.
**resolve** 38:8.
**resolved** 7:5, 30:24.
**respect** 8:23, 10:6.
**respond** 6:18.
**response** 5:17.
**rest** 3:16, 10:20, 18:23.
**retroactively** 23:22.
**reverse** 32:19, 39:6.
**reversed** 32:10, 32:21.
**review** 3:10, 3:12, 12:5, 13:2, 21:3, 21:19, 29:3, 34:21.
**reviewed** 36:6.
**revised** 4:4, 4:8.
**ridiculous** 19:17.
**rightness** 27:6.
**Rio** 25:11, 31:9.
**ripe** 7:24, 18:23.
**room** 9:20.
**rug** 8:4, 19:2, 27:3, 32:1.
**rule** 23:12, 23:13, 23:21, 26:21, 32:19, 36:18, 38:15, 39:19.
**rule-making** 32:9.
**ruled** 8:19, 26:3.
**ruling** 4:4, 4:8, 12:10, 13:12, 13:15, 24:1, 24:3, 24:8, 24:9, 26:6, 26:10, 26:12, 26:14, 26:15, 26:22, 27:9, 28:2, 28:7, 28:11, 30:17, 32:4, 32:8, 32:12, 32:20, 34:10, 34:18, 35:24, 38:16, 38:19, 38:21, 38:23, 39:1, 39:5, 39:11, 39:17.
**rulings** 4:22, 5:3, 11:12, 12:9, 15:18, 20:16, 24:19, 28:13, 32:3.
**run** 30:9, 35:7.
.
.
<S>.
**sadly** 8:13.
**saw** 6:7, 6:9.
**saying** 5:24, 7:9, 10:15, 11:6, 18:11, 19:1, 19:6, 39:11.
**seal** 41:31.
**seated** 21:14.
**Second** 7:22, 19:24, 20:12, 27:3, 27:11.
**secret** 20:11.
**Secretary** 1:14, 3:12, 3:13, 4:22, 5:2, 5:5, 5:7, 11:4, 11:7, 11:15, 11:16, 14:9, 14:12, 14:24, 18:1, 21:21, 21:23, 22:8, 23:7, 23:11, 23:17, 33:25, 34:7, 35:18, 36:20, 38:2, 39:2, 41:14.
**seek** 35:5.
**seeking** 28:10.
**seeks** 28:12, 37:21.
**seem** 16:9, 16:11.
**seems** 14:3, 14:5, 36:6, 38:4, 38:12.
**sense** 8:9.
**sent** 20:9, 20:10.
**separate** 4:1.
**service** 24:11, 26:25, 30:14, 32:6, 36:2, 36:3.
**Services** 1:16, 21:15, 24:5, 41:15.
**set** 32:5, 32:13, 32:17, 37:2, 41:30.
**setting** 36:18.
**settled** 14:23.
**settlement** 18:7, 18:9.
**shall** 40:5.
**shift** 31:23.
**shifts** 28:9.
**shorthand** 41:26.
**shouldn't** 38:17, 39:12.
**show** 15:22, 20:13, 31:17, 31:24.
**sign** 15:25.
**signed** 11:8, 15:19, 24:3, 24:4.
**significant** 7:17.
**signs** 15:23.
**silent** 18:13.
**Silvery** 25:11.
**simple** 10:23.
**simply** 27:22, 28:10.
**single** 12:25, 13:1.
**sit** 36:4.
**sitting** 19:16.
**situation** 40:4.
**SMITH** 1:7, 3:2, 3:5, 3:7, 3:14, 3:16, 3:21, 3:24, 4:13, 8:9, 10:25, 11:3, 17:3, 17:9, 22:19, 23:2, 34:24, 41:7.
**Social** 1:15.
**solely** 3:20, 12:6, 17:8.
**somebody** 12:10.
**somehow** 30:24.
**someone** 13:24.
**somewhat** 5:6.
**somewhere** 14:19, 30:25.
**soon** 7:4, 13:13, 32:21.
**sorry** 11:25, 18:13, 23:18, 33:11.
**sort** 5:23, 6:19, 19:7, 22:25.
**sought** 3:23, 4:1, 4:13, 21:19.
**sound** 14:17.
**sounds** 14:18, 18:21.
**speaking** 30:10.
**specific** 5:4.
**speculative** 16:10, 18:21, 19:23, 20:14, 20:21.
**Spokane** 6:10.
**stand-alone** 34:2.
**standard** 14:12.
**Standing** 30:1.
**start** 13:15.
**starting** 13:21, 30:11.
**State** 41:1, 41:34.
**stated** 31:16.
**statement** 24:6.
**statements** 15:12.
**States** 1:3, 1:14, 21:18, 41:14.
**status** 37:6.
**statute** 11:1, 11:8, 11:13, 11:20, 17:1, 17:2, 29:2, 38:3.
**statutes** 6:2.
**statutory** 25:23, 27:12, 27:13.
**staying** 18:13.
**steadfast** 25:23.
**step** 13:1.
**stood** 6:14.
**stop** 5:8, 6:8, 6:10, 8:17, 11:21.
**stopped** 7:2, 20:15.

**stream** 26:19.
**stringent** 14:11.
**strongly** 36:7.
**struggling** 19:8.
**stuff** 18:6.
**subjected** 11:9.
**submission** 6:12.
**submitted** 4:9, 10:9, 20:7, 40:5.
**submitting** 3:6, 20:4.
**successful** 4:5.
**sudden** 32:16.
**suffers** 8:15.
**suggest** 33:21, 34:20, 36:7.
**suggests** 37:13.
**summary** 11:19.
**Sunday** 6:21.
**supplies** 22:11.
**Supreme** 6:22, 26:12, 39:20.
**switch** 32:16.
.
.
<T>.
**T.** 6:21.
**table** 22:4.
**tactics** 28:10.
**TDL** 7:20, 21:4, 21:9, 26:21.
**technical** 6:7, 16:20, 23:22.
**tells** 13:24.
**Tens** 12:18, 12:19, 15:20, 19:18, 20:2.
**TENTH** 1:4, 41:3.
**term** 6:1.
**terms** 10:15, 20:14, 39:15.
**test** 26:15.
**theories** 3:25.
**theory** 13:9, 24:22, 25:24.
**therapeutic** 23:14.
**they've** 13:11, 20:1, 27:18.
**thinking** 17:12, 19:16.
**thinks** 9:21.
**third** 23:9.
**though** 24:21.
**thousands** 12:18, 12:19, 12:20, 15:20, 19:18, 20:3, 38:6.
**threat** 19:12.
**Three** 6:19, 8:10, 8:24, 9:13, 9:16, 9:24, 10:5, 10:6, 10:12, 13:18, 18:4, 18:12, 21:20, 22:2, 22:7, 27:16, 33:8, 34:19.
**Throughout** 4:24, 4:25, 7:11.
**thrown** 13:11.
**TIMOTHY** 1:28.
**today** 20:23.
**tomorrow** 24:17, 40:7.
**took** 23:21, 36:16, 41:25.
**totally** 12:14.
**toward** 24:1, 26:24.
**towel** 13:11.
**TRANSCRIPT** 1:25, 2:1.
**transcription** 41:28.
**tribunal** 3:9.
**tried** 15:2, 15:4, 15:6, 15:8.
**true** 31:15, 35:18, 41:28.
**trust** 14:1, 15:10.
**trusted** 7:14, 7:18.
**try** 8:4, 19:15.
**trying** 34:21, 35:5.
**Tuesday** 2:3.
**turn** 13:13.
**turned** 6:20.
**two** 5:21, 14:15, 17:21, 21:1, 26:1, 27:6.
**two-line** 17:13, 17:15.
**two-sentence** 3:19.
**TYMKOVICH** 1:28.
**type** 8:14.
**typically** 14:10.
.
.
<U>.
**understand** 34:12, 34:14, 40:3.
**United** 1:3, 1:14, 21:18, 41:1, 41:14.
**unless** 25:18.
**until** 27:8, 27:15, 40:6.
**using** 30:6, 34:1.
.
.
<V>.
**validity** 28:6, 38:15, 39:5.
**variety** 38:4.
**vehicle** 36:8.
**victory** 5:11.
**view** 6:11, 7:9.
**violate** 11:16, 11:20.
**violation** 4:24, 5:3.
**violative** 11:13.
**voluntary** 6:22, 13:23, 14:8, 14:16, 15:10, 19:25, 24:24, 27:4, 30:22, 31:4.
**vs** 3:2, 25:9, 25:10, 25:12, 36:14, 37:4.
.
.
<W>.
**W.** 6:21.
**wanted** 11:14.
**ways** 13:18, 26:1.
**week** 24:2.
**whatever** 7:14, 7:17, 12:7, 14:23, 38:11.
**whereof** 41:30.
**whether** 5:15, 7:12, 7:14, 14:2, 28:13, 35:8, 35:11, 35:12, 35:13, 39:10, 39:17.
**whole** 7:11, 13:18, 15:16, 20:15.
**Will** 8:9, 8:15, 11:2, 22:8, 23:9, 24:14, 27:8, 29:18, 30:13, 31:25, 32:20, 40:6.
**win** 4:15, 7:25, 9:6, 9:8, 13:4.
**Wisconsin** 41:34.
**wish** 5:12, 5:13.
**withdrawal** 25:2.
**within** 26:11.
**without** 4:23, 11:12, 18:21, 20:17, 28:14.
**witness** 41:30.
**won** 9:10, 9:22, 9:24, 10:11, 10:15.
**words** 13:11, 18:1.
**worked** 24:1.
**world** 11:2.
**worried** 7:25.
**written** 12:10, 12:12, 12:13.
.
.
<X>.
**XAVIER** 1:13, 41:13.
.
.
<Y>.
**Yamasaki** 36:14, 37:4.
**year** 25:10.
**years** 3:6, 12:17, 20:2.
**yesterday** 11:25.