1    Roger M. Townsend
     BRESKIN, JOHNSON & TOWNSEND, PLLC
2    1000 Second Ave, Suite 3670
     Seattle, WA 98104
3    Phone: (206) 652-8660

4

5              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF WASHINGTON

6

7    JEREMY OLSEN,                    No. 2:21-cv-00326-SMJ

                    Plaintiff,        OPPOSITION TO MOTION
8    v.                               FOR DISCOVERY

9    XAVIER BECERRA, in his official
     capacity as Secretary of the United
10   States Department of Health and
     Human Services,
11
                    Defendant
12

13

14

15

16

17

18

19

20

OPPOSITION TO MOTION FOR          **BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
DISCOVERY                         1000 Second Avenue, Suite 3670
                                  Seattle, Washington 98104  Tel: 206-652-8660

1    Plaintiff Jeremy Olsen files this opposition to the Secretary's motion

2    for discovery.  While Olsen fears nothing, the Secretary's request has a

3    false premise, is legally barred, and would be irrelevant in any event.

4    The Secretary's motion is designed to distract from the deaths his bad

5    faith conduct has caused. Every severe hypoglycemic event causes

6    irreparable damage to the body that, in the short term, can lead to death and,

7    in the long term, can lead to brain damage, blindness, amputations, heart

8    disease, etc.[1] On average, Type I diabetics (like Mr. Olsen) have 0.2-3.2 of

9    these events every year.  Type I diabetics that suffer from hypoglycemic

10   unawareness (like Mr. Olsen) have a six-fold increase in the risk of a severe

11   hypoglycemic event.[2] A continuous glucose monitor is designed to help

12

13   [1] *See, e.g., Morales,* "Hypoglycemia", American Journal of Medicine, Vol.

14   127, No. 10A, pg S17-24 (October 2014) (hypoglycemia associated with 4-

15   10% of deaths of Type I patients, dementia graded with frequency of sever

16   hypoglycemic events); *Langan,* "Cumulative Cognitive Impairment

17   Following Recurrent Hypoglycemia in Adult Patients With Insulin Treated

18   Diabetes Millitus", Diabetologia, 1911; 34:337-344.

19   [2] *See, e.g., Reddy,* "A Randomized Controlled Pilot Study of Continuous

20   Glucose Monitoring and Flash Glucose Monitoring in People With Type I

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  prevent these severe episodes (and, therefore, the resulting damage/deaths)

2  by continuously monitoring blood glucose levels, alerting users to issues

3  and, in some cases, automatically dispending insulin.[3]

4       Through July 31, 2019, the Secretary denied ~250,000 claims by

5  ~79,000 people on the basis of the illegally issued, "bad faith" 1682-R and

6  that total was increasing by ~13,000 claims/month.  *See Lewis v. Becerra*,

7  Case No. 18-cv-2929 (D.D.C.), Dkt. #81 at 2.  Further, 50% of Medicare

8  insureds live on less than $30,000/year, while 25% live on less than

9  _____

10  Diabetes and Impaired Awareness of Hypoglycemia", Diabetic Medicine

11  35, 483-490 (2018) ("People with Type I diabetes on average have 1.8 self-

12  treated episodes of hypoglycemia per week, and 0.2-3.2 episodes of severe

13  hypoglycemia, defined as hypoglycemia requiring the assistance of a third

14  party, annually. … Impaired awareness of hypoglycemia increases the risk

15  of sever hypoglycemia six-fold.").

16  [3] *See, e.g., Argento,* "Personal Real-Time Continuous Glucose Monitoring

17  in Patients 65 Years and Older", Endocrine Practice, Vol. 20, No. 12, pg.

18  1297-132 (2014) (CGM usage results in 48% reduction in patients having

19  severe hypoglycemic events and 79% reduction in such events compared to

20  finger-sticks).

OPPOSITION TO MOTION FOR
DISCOVERY - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   $17,000/year.[4] That means that, at a minimum, through July 2019, ~20,000

2   people were denied a CGM who would otherwise not be able to afford one.

3   Combined with the statistics on the frequency of severe hypoglycemic

4   events, that means that, at an absolute minimum, through July 2019, the

5   Secretary was responsible for 4,000-144,000 severe events/year that could

6   have otherwise been prevented. *See Bloom v. Azar*, 2018 WL 583111 at *2

7   (D. Vermont January 29, 2018) ("life threatening").  The Secretary's request

8   for discovery should be denied.

9                                **DISCUSSION**

10              **Objection to the "Administrative Record"**

11          Before even addressing the Secretary's arguments, as a technical

12   matter, Olsen must object to the documents the Secretary refers to as part of

13   the "administrative record." In particular, the Secretary refers to AR510-

14   532, AR539-40, and AR566.  These documents are part of the Secretary's

15   representative's bad faith game with the administrative record.

16          First, in intentional violation of 42 U.S.C. § 405(g), the Record was

17   not produced with the Secretary's Answer, thereby precluding Olsen from

18   _____

19   [4] https://www.kff.org/medicare/issue-brief/medicare-beneficiaries-

20   financial-security-before-the-coronavirus-pandemic/

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    moving for summary judgment.  Then, only part of the administrative record

2    was served.  *See* Dkt. #15; #19.  Then, another administrative record was

3    served but it included materials not communicated to/with Olsen and on

4    which the Secretary did not base the denials at issue in this.  Olsen objected.

5    *See* Dkt. #32; #40.

6           The    documents    referenced    are,    apparently,    internal

7    emails/communications, related to the Secretary's effort to continue to

8    engage in bad faith denials of CGM claims while avoiding judicial review

9    by paying only the claims of those who reached District Court.  The

10    Secretary seems to feel that documentation of his bad faith conduct helps

11    him somehow and, therefore, simply includes these materials in the

12    "administrative record."

13           It is elemental that the "administrative record" consists of only "the

14    appealed determinations, and documents and other evidence used in making

15    the appealed determinations and the ALJ's or attorney adjudicator's

16    decision," as well as any proffered evidence excluded by the adjudicator.

17    *See* 42 C.F.R. § 405.1042.  Just as Medicare insureds cannot simply ask for

18    anything to be thrown into the Record (which the Court's review is generally

19    limited to), nor can the Secretary.  Here, the Secretary has not shown that

20    these materials were considered by the decision makers who denied Olsen's

OPPOSITION TO MOTION FOR
DISCOVERY - 4

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    claims.  *See, e.g., Goffney v. Becerra*, 995 F.3d 737, 747*48 (9th Cir. 2021).

2    Thus, the materials would be excluded from any consideration by the Court.

3        Courts can consider extra-record evidence in limited circumstances

4    that are "narrowly construed and applied." *Id.*  Here, the Secretary has not

5    shown those circumstances but just throws things into the "record" that he

6    likes.  The Secretary is renown for objecting to supplementation of the

7    administrative record and the same strictness should be applied to the

8    Secretary.

9        In the event, the Court chooses to consider these materials, then the

10   complete documents should be produced (as opposed to documents

11   redacting portions the Secretary finds unhelpful) as should all the other

12   materials related to the same subject matter (*i.e.*, the payment of Olsen's

13   CGM claims).  The materials that would otherwise be privileged should not

14   be used as both a sword and a shield.

15   **The Secretary's Other Assertions**

16       As set forth in the Secretary's papers, the Secretary seeks all

17   communications to or from Olsen and MiniMed related to CGMs from

18   January 1, 2019, through the present (*i.e.*, a three and a half year period).

19   *See* Attachment A.

20

OPPOSITION TO MOTION FOR
DISCOVERY - 5

1      The Secretary contends that these communications *may* show that,

2   sometime between July and October 1, 2021, MiniMed communicated to

3   Olsen that the Secretary was paying the claims in suit.  If true, the Secretary

4   contends "that fact will defeat Plaintiff's allegations of 'bad faith' and

5   concealment by Defendant and his counsel, and may warrant summary

6   dismissal of Plaintiff's constitutional due process claim." Mot. at 2.  The

7   Secretary further contends that, to the ALJ in one of the underling matters,

8   the undesigned counsel for Olsen made "statements which appears on their

9   face to suggest that the claim had *not* been paid." Mot. at 6.  Likewise, the

10  Secretary contends that: "there is reason to believe that Plaintiff knew that

11  the March 2021 claim had been paid by Medicare long before he appeared

12  before the ALJ on October 8, 2021.  If confirmed through discovery that fact

13  would render Plaintiff's statements to the ALJ materially misleading, and

14  could warrant summary dismissal of Plaintiff due process claim." Mot. at 7.

15  Likewise, the Secretary asserts: "If discovery confirms that Plaintiff or his

16  counsel learned that the claims had been paid in July 2021, and then failed

17  to disclose that information during the course of the administrative appeal

18  proceedings, Plaintiff's representations will be rendered completely

19  frivolous." Mot. at 8.  To put it mildly, these positions/claims are utterly

20  devoid of merit.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    First, the Complaint in this case asserts that on October 1, 2021 (*i.e.*,

2    before this suit was filed), Olsen was sent a Medicare Summary Notice

3    contending that the claims in this case would be paid.  *See* Complaint at ¶

4    76-77.[5] The Complaint also asserts that where there is a simultaneous denial

5    and payment of a claim, the Secretary has the right to recoup any alleged

6    overpayment, including from Social Security benefits.  *See* Complaint at ¶

7    78.  Thus, regardless of whether Olsen learned of the alleged payment in

8    July or October, Olsen's allegations remain the same.

9    Second, there are two claims at issue in this case.  One of them relates

10    to the April 19-July18, 2019, timeframe, where the claims were denied on

11    the basis this Court determined constituted bad faith.  An appeal of the bad

12    

13    [5] This appears to be because Olsen attempted to utilize the "expedited access

14    to judicial review" procedure of 42 U.S.C. § 1395ff(b)(2). *See* AR406-08.

15    Because such requests are submitted to a special three judge panel and have

16    a tight time frame to decide, that submission on September 8, 2021,

17    apparently got attention with the Secretary realizing that he was within 3

18    weeks or so of being sued again. Shortly thereafter, the October 1, 2021,

19    MSN alleging payment of most pending and past claims was sent to Olsen

20    but the Secretary did not withdraw his denials.

OPPOSITION TO MOTION FOR
DISCOVERY - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   faith denial through and including the ALJ stage had been pending at the

2   MAC since February 2020.  *After* this Court's decision that the Secretary's

3   denials constituted bad faith in April 2021, the MAC denied Olsen's appeal

4   on the bad faith grounds on October 22, 2021.  However, *if* Olsen learned

5   of the alleged payment in July, then Olsen still contends that the October

6   MAC decision denying his claim was in bad faith and should be reversed.

7   The information simply seems to be irrelevant.

8          As to the March 10, 2021, claim, a "reconsideration request" was

9   submitted on June 30, 2021, and denied on September 24, 2021 (again, on

10  the bad faith grounds).  *See* AR323-26; AR360-63.  How knowledge of

11  alleged payment in July would have any effect here is not explained.

12  Because of the denial, Olsen was required to appeal or be subject to

13  recoupment.  Again, whether there was alleged payment in July or October

14  or alleged knowledge of the same is irrelevant.   The Secretary denied

15  Olsen's claims and Olsen appealed as he was required to do.

16         Next, the Secretary appears to assert an ethical violation by the

17  undersigned counsel.  That is, the Secretary alleges that the undersigned

18  counsel misled the ALJ when he represented that Olsen's claims were

19  denied because, the Secretary alleges Olsen's counsel knew the claims were

20  paid.  That allegation is meritless.  First, of course, the claims actually were

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   denied – that is why there was an appeal.[6] Thus, counsel's statements were

2   true.   Second, as detailed above - because of recoupment – payment of

3   claims does not resolve a matter as long as the claims continue to be denied

4   as they were in this case.   Thus, regardless of when Olsen or his counsel

5   learned of the alleged payment (either in July, before the ALJ hearing on

6   October 8, 2021, or after) there is simply no basis for contending that they

7   behaved improperly in any way or that the requested discovery would shed

8   light on anything.[7]

9   _____

10   [6] Indeed, the Secretary cannot even admit that Olsen's claims were denied

11   in this case. Mot. at 5 ("Plaintiff is challenging two administrative decisions

12   that purport to deny the subject claims.") In Olsen's view, it is precisely the

13   linguistic gymnastics that led the Secretary to adopt the bad faith position

14   that a CGM is not "primarily and customarily used to serve a medical

15   purpose" which position led to the suffering and deaths of so many.

16   [7] Olsen notes that the October 1, 2021 MSN bears that date but there is no

17   evidence that that was the date it was actually sent by the Secretary or what

18   date it was received by Olsen or his counsel. The ALH hearing was held on

19   October 8, 2021. Given the delay in mailing documents by the Secretary,

20   counsel for Olsen objects to the Secretary's speculation.

OPPOSITION TO MOTION FOR
DISCOVERY - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1         Finally, the Secretary contends that if Olsen knew that the claims

2    were allegedly paid in July, then Plaintiff's claim were "completely

3    frivolous" and "may warrant summary dismissal of Plaintiff's

4    constitutional due process claim." Mot. at 2.  Plaintiff's due process claim

5    is founded on the notion that the Secretary and his ALJs are not neutral

6    decision makers.  As alleged, this is so because the ALJs are beholden to

7    the Secretary and simply follow whatever bad faith, illegal policy the

8    Secretary asserts rather than neutrally following the laws and regulations.

9    This is the reason all the ALJs denied, in bad faith, CGM claims on the

10   grounds that a CGM was not "primarily and customarily used to serve a

11   medical purpose." Olsen, as well as other Medicare insureds, are entitled

12   to neutral decision makers.  Yet other alleged evidence of the lack of

13   neutral decision makers was the response to Olsen's request for expedited

14   access to judicial review.  The handling of that by the DAB, again, reveals

15   that the ALJs are not neutral.  Thus, the due process violation.  How any of

16   this would be affected by when Olsen learned of the alleged payment is

17   unexplained.  There is simply no basis for the Secretary's claims

18   warranting discovery.

19                      **CONCLUSION**

20        The Secretary's motion should be denied.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1

Respectfully submitted July 8, 2022.

2

PARRISH LAW OFFICES

3

4

By: */s/ James C. Pistorino*_____
    James C. Pistorino

5
    Pro Hac Vice

6

BRESKIN, JOHNSON, & TOWNSEND, PLLC

7

8

By: *s/ Roger Townsend*_____
    Roger M. Townsend, WSBA No. 25525

9
    rtownsend@bjtlegal.com
    1000 Second Ave, Suite 3670

10
    Seattle, WA 98104
    Phone: (206) 652-8660

11

*Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

OPPOSITION TO MOTION FOR
DISCOVERY - 11

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660