1  Roger M. Townsend
   BRESKIN, JOHNSON & TOWNSEND, PLLC
2  1000 Second Ave, Suite 3670
   Seattle, WA 98104
3  Phone: (206) 652-8660

4

5

6

7
                  IN THE UNITED STATES DISTRICT COURT
8                FOR THE EASTERN DISTRICT OF WASHINGTON

9
   JEREMY OLSEN,
10                                          No. 2:21-cv-00326-TOR
                    Plaintiff,
11                                          MOTION FOR SUMMARY
   v.                                       JUDGMENT AND
12                                          APPOINTMENT OF A
   XAVIER BECERRA, in his official          SPECIAL MASTER
13 capacity as Secretary of the United
   States Department of Health and          November 22, 2022
14 Human Services,                          With Oral Argument: 2:30 PM
                                            Spokane
15                  Defendant

16
         Pursuant to FED.R.CIV.P. 53 and 56, Plaintiff Jeremy Olsen moves for
17
   summary judgment of his Due Process claim and for appointment of a
18
   Special Master.
19

20

MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

# I. Background

In the interests of brevity, Mr. Olsen will not repeat the background material detailed in his co-pending motion for summary judgment, which he incorporates herein. *See* Dkt. #51.

Every severe hypoglycemic event causes irreparable damage to the body that, in the short term, can lead to death and, in the long term, can lead to brain damage, blindness, amputations, heart disease, etc.[1] On average, Type I diabetics (like Mr. Olsen) have 0.2-3.2 of these events every year. Type I diabetics that suffer from hypoglycemic unawareness (like Mr. Olsen) have a six-fold increase in the risk of a severe hypoglycemic event.[2]

---

[1] *See, e.g., Morales,* "Hypoglycemia", American Journal of Medicine, Vol. 127, No. 10A, pg S17-24 (October 2014) (hypoglycemia associated with 4-10% of deaths of Type I patients, dementia graded with frequency of severe hypoglycemic events); *Langan,* "Cumulative Cognitive Impairment Following Recurrent Hypoglycemia in Adult Patients With Insulin Treated Diabetes Millitus", Diabetologia, 1911; 34:337-344.

[2] *See, e.g., Reddy,* "A Randomized Controlled Pilot Study of Continuous Glucose Monitoring and Flash Glucose Monitoring in People With Type I Diabetes and Impaired Awareness of Hypoglycemia", Diabetic Medicine

1   A continuous glucose monitor is designed to help prevent these severe
2   episodes (and, therefore, the resulting damage/deaths) by continuously
3   monitoring blood glucose levels, alerting users to issues and, in some cases,
4   automatically dispending insulin.[3]

5   To be clear, the underlying basis for denials under CMS 1682-R is the
6   bad faith assertion that a CGM is not "primarily and customarily used to
7   serve a medical purpose." As disclosed in other papers, through July 31,
8   2019, the Secretary denied ~250,000 claims by ~79,000 people on the basis
9   of the illegally issued, "bad faith" 1682-R and that total was increasing by

---

35, 483-490 (2018) ("People with Type I diabetes on average have 1.8 self-treated episodes of hypoglycemia per week, and 0.2-3.2 episodes of severe hypoglycemia, defined as hypoglycemia requiring the assistance of a third party, annually. … Impaired awareness of hypoglycemia increases the risk of sever hypoglycemia six-fold.").

[3] *See, e.g., Argento,* "Personal Real-Time Continuous Glucose Monitoring in Patients 65 Years and Older", Endocrine Practice, Vol. 20, No. 12, pg. 1297-132 (2014) (CGM usage results in 48% reduction in patients having severe hypoglycemic events and 79% reduction in such events compared to finger-sticks).

MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 3

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

~13,000 claims/month. *See Lewis v. Becerra*, Case No. 18-cv-2929 (D.D.C.), Dkt. #81 at 2. Further, 50% of Medicare insureds live on less than $30,000/year, while 25% live on less than $17,000/year.[4] That means that, at a minimum, through July 2019, ~20,000 people were denied a CGM who would otherwise not be able to afford one. Combined with the statistics on the frequency of severe hypoglycemic events, that means that, at an absolute minimum, through July 2019, the Secretary was responsible for 4,000-144,000 severe events/year that could have otherwise been prevented. *See Bloom v. Azar*, 2018 WL 583111 at *2 (D. Vermont January 29, 2018) ("life threatening"). Of course, these events could not have happened without the active assistance of the ALJs (including the members of the Medicare Appeals Council).

In the prior case, Medicare Appeals Council' ALJs Debbie Nobleman and Constance Tobias concluded that CGMs were not "primarily and customarily used to serve a medical purpose" and denied Olsen's claim. *See Olsen v. Becerra*, Case No. 20-cv-374 (SMJ) (Eastern District of Washington), Dkt #2, Ex. F. This was so even though Olsen was prescribed

---

[4] https://www.kff.org/medicare/issue-brief/medicare-beneficiaries-financial-security-before-the-coronavirus-pandemic/

a CGM to control his Type I diabetes and protect his transplanted kidney. This Court found that holding to constitute bad faith.

At issue in this case are two claims. One of them relates to the April 19-July18, 2019, timeframe, where the claims were denied on the same basis this Court had already determined constitutes bad faith. There ALJ Norman Jacobson, Jr. denied Olsen's claim on the bad faith grounds that a CGM is not "primarily and customarily used to serve a medical purpose" as set forth in the illegally issued CMS 16282-R. See AR82-86. An appeal of the bad faith denial by the ALJ had been pending at the MAC since February 2020. *After* this Court's decision that the Secretary's denials constituted bad faith in April 2021, the MAC (through ALJ Jeffrey Sacks) denied Olsen's appeal on the bad faith grounds on October 22, 2021. See AR3-12.

As to the March 10, 2021, claim, that claim was denied initially, on redetermination, and on reconsideration on the bad faith grounds and no other. *See* AR323-26; AR360-63; AR 431. *See also* Dkt. #1 (Complaint) at ¶¶ 69, 70, 72; Dkt. #41 (Second Amended Answer) at ¶¶ 69, 70, 72.[5]

---

[5] The Secretary's initial groundless refusal to admit these allegations of the Complaint and Olsen's insistence on good faith compliance with the Rules is why there is a "Second Amended" Answer in this case.

1   Thereafter, Mr. Olsen sought to utilize the "expedited access to
2   judicial review" process provided by the statute. 42 U.S.C. § 1395ff(b)(2).
3   That process is available when the reviewing body does not have the
4   authority to decide a matter relevant to the claim at issue. *See* §
5   1395ff(b)(2)(A).

6   Pursuant to the Secretary's regulations, insureds seeking expedited
7   access to judicial review are required to submit both a request for expedited
8   access showing that the basis for challenge is something the ALJs lack
9   authority to rule on and also submit a request for ALJ hearing. Olsen did
10  so. See AR406-08.

11  Thereafter, on November 2, 2021 (*i.e.*, *after* this Court's "bad faith"
12  finding), ALJ's Constance Ramos and Christopher Randolph (acting in the
13  form of the "Departmental Appeals Board") denied Olsen's request for
14  expedited access to judicial review. *See* AR400-05. The basis for the denial
15  was the allegation that, though the only basis for rejection of Olsen's claim
16  was the illegally issued CMS 1682-R and the ALJs with the department are
17  bound by it and cannot find it invalid, an ALJ might create some other

MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 6

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

reason to deny Olsen's claim.[6]  Thus, ALJs Ramos and Randolph denied Olsen's request in favor of an ALJ ruling where the ALJ was required to follow the illegally issued CMS 1682-R and deny Olsen's claim. Accordingly, ALJs Ramos and Randolph rendered the statute a nullity and subjected Olsen to the very waste of time, resources, and delay the statute exists to avoid.

Within days, ALJ Jason Earnhart denied Olsen claim for coverage, again, on the bad faith, illegal grounds.  *See* AR385-89.  ALJ Earnhart did so on the grounds that he was bound by the Secretary's regulations to follow the illegal CMS 1682-R and issue a decision applying the bad faith grounds.

---

[6] On its face, such an approach is barred by 42 C.F.R. §§ 405.1018 and 405.1032, which limit the issues a ALJ can consider to those set forth in the request for an ALJ hearing.  In the present case, Olsen requested an ALJ hearing solely on the basis that CMS 1682-R issued illegally and, therefore, could not be used to deny his claim.  *See* AR367-68.  Of course, the illegally issued CMS 1682-R was the only basis on which Olsen's claim was denied. Thus, had an ALJ attempted to rule on whether a CGM is "medically reasonable and necessary", that would have violated the Secretary's own regulations.

MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 7

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  Had Olsen waited, the Secretary's effort to defy Congress and delay/avoid judicial review would have been successful. Unwilling to let the Secretary defy Congress, Olsen promptly filed this suit.

Beyond Mr. Olsen, it is known that, through July 2019, both ALJs and the MAC had denied CGM claims on the bad faith grounds ~150 times each. *See Lewis, et al. v. Becerra*, Case No. 18-cv-2929 (pending in the United States Court for the District of Columbia), Dkt. #63 at 10.

Because there is no cure for the Type I diabetes that Mr. Olsen suffers from, Olsen will have CGM claims for the rest of his life, that, ultimately, will be subject to review by the same Department/ALJs that previously denied his claims multiple times on bad faith, illegal grounds.

## II.    DISCUSSION

### A.    Olsen's Due Process Rights Were Violated Because the ALJs Within the Department Are Not Impartial, Disinterested Decisionmakers

Of course, it is elemental that the Due Process Clause of the United States Constitution requires notice and an opportunity to be heard before an impartial and disinterested decision maker. *See, e.g. Withrow v. Larkin*, 421 U.S. 35, 47 (1975) ("a biased decisionmaker is constitutionally unacceptable") (cleaned up); *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir. 1987) ("Administrative decisionmakers do not bear all the badges of
MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 8

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  independence that characterize and Article III judge, but they are held to the
2  same standard of impartial decision making.")(*citing Schweiker v. McClure*,
3  456 U.S. 188, 195 (1982)); *Kennerly, v. U.S.*, 721 F.2d 1252, 1257 (9th Cir.
4  1983) ("a due process hearing need not take the form of a judicial
5  proceeding, an administrative hearing with an impartial decisionmaker may
6  suffice") (cleaned up).

7  In the present case, the issue is that the ALJs within the Department
8  have demonstrated that they are not impartial. Rather than faithfully
9  applying the laws of the United States, the ALJs have demonstrated that
10 their fealty is to the Secretary and whatever ridiculous, illegal, thing he
11 might happen to say. How did so many ALJs come to the bad faith,
12 ludicrous conclusion that a CGM is not "primarily and customarily used to
13 serve a medical purpose" when no rational person could have? Especially
14 when it was both known that the denial of prescribed CGMs would lead to
15 irreparable harm, including death? When the "Ruling" issued illegally?
16 Over such a long period of time?

17 The answer is that the ALJs are partisans beholden to their master (the
18 Secretary), rather than their oaths and the law. To quote Shakespeare, when
19 the Secretary says that the Sun is the Moon, the ALJs say: "see the blessed
20

MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 9

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  moon."[7]  As demonstrated in this case, there is no irrational, deadly, illegal
2  position that the ALJs will not adopt when their master directs them to.  That
3  is the opposite of an impartial, neutral decision maker.

4  In this regard, the conduct of ALJ Ramos and Randolph merits
5  discussion.  The circular reasoning engaged in to deny Mr. Olsen's request
6  for expedited access to judicial review, demonstrates an intent to
7  delay/avoid judicial review rather than faithfully apply the laws of the
8  United States.

9  Olsen emphasizes that what is at issue here is not a one-time mistake
10 or even a mistake by the Secretary.  Instead, it was all deliberate.  Of course,
11 the law presumes that every person intends that natural consequences of his
12 acts.  *See, e.g., U.S. v. Leora*, 923 F.2d 725, 728 (9th Cir. 1991).  As
13 demonstrated above, an unknown number but at least one fourth of all
14 Medicare insureds would not able to afford a CGM absent the coverage the
15 insureds paid for.  CGMs are only available on a prescription basis and are
16 intended, at least in part, to present the severe hypoglycemic events that lead
17 to irreparable injury, including death.  Accordingly, the natural consequence
18 of denial of coverage is that people would suffer brain damage, etc.,

---

20  [7] *See* William Shakespeare, *Taming of the Shrew*, Act 4, Scene 5.

MOTION FOR SUMMARY JUDGMENT
AND APPOINTMENT OF A SPECIAL
MASTER - 10

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

including death. Thus, when medical doctor, Patrick Conway, signed CMS 1682-R (see AR274) and the Secretary illegally issued it, they intended that irreparable harm, including death, that was the natural consequence of that act. The Secretary continued in this fashion for some five years.

The Secretary violated Olsen's Due Process rights under the Constitution when he failed to provide impartial, neutral decision makers to consider CGM claims.

**B.    A Special Master Should Be Appointed**

Pursuant to FED.R.CIV.P. 53(C), a Court may appoint a Special Master to address posttrial matters that cannot be effectively and timely addressed by an available district court or magistrate.

As detailed in this and other papers, there is no cure for Type I diabetes and, therefore, Type I diabetics prescribed a CGM (like Mr. Olsen), will have repeated claims for CGM coverage (*e.g.*, sensors and transmitters). When denied, these claims will be considered by the same ALJs/Department who previously engaged in the bad faith, illegal conduct, even after a "bad faith" ruling by this Court. Given that they have already demonstrated their lack of impartiality, subjecting the insureds to a repeat of the process where so many were irreparably injured is not appropriate.

1  This Court should appoint a Special Master to monitor/oversee and, if necessary, reverse any denials of claims for CGM coverage on the grounds that a CGM is not "durable medical equipment" for a period of five years. The Secretary has demonstrated that he and his ALJs are not trustworthy and that effective oversight is necessary to prevent them from repeating the conduct at issue in these cases that led to the injury of so many.

### III. CONCLUSION

For the reasons set forth above, this Court should grant summary judgment that the Secretary violated Mr. Olsen's Due Process rights, when the Secretary subjected Mr. Olsen to decisionmakers who were not impartial. In addition, this Court should appoint a Special Master to oversee the Secretary's consideration of CGM claims and prevent yet another repetition of the bad faith, deadly conduct.

Respectfully submitted September 19, 2022.

PARRISH LAW OFFICES

By: */s/ James C. Pistorino*_____
    James C. Pistorino
    Pro Hac Vice

BRESKIN, JOHNSON, & TOWNSEND, PLLC


By: *s/ Roger Townsend*_____
    Roger M. Townsend, WSBA No. 25525
    rtownsend@bjtlegal.com
    1000 Second Ave, Suite 3670
    Seattle, WA 98104
    Phone: (206) 652-8660

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the state of Washington that on the date below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Vanessa R. Waldref
United States Attorney
John T. Drake
Assistant United States Attorney
UNITED STATED DEPARTMENT OF JUSTICE
920 W. Riverside Ave, Suite 340
Spokane, WA  99201

DATED September 19, 2022, at Seattle, Washington.

*s/ Jesica A. McClure*
Jesica A. McClure, Paralegal