Roger M. Townsend
BRESKIN, JOHNSON & TOWNSEND, PLLC
1000 Second Ave, Suite 3670
Seattle, WA 98104
Phone: (206) 652-8660

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEREMY OLSEN,<br><br>        Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services,<br><br>        Defendant. | No. 2:21-cv-00326-SMJ<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGEMENT |

The Secretary is a bad faith actor whose illegal policies have intentionally, irreparably injured tens of thousands, including by causing their deaths. The Secretary is a bad faith litigant who previously engaged in "bad faith mischaracterizations" to this court.

Moreover, the Secretary has engaged in improper litigation conduct: the Secretary previously failed to serve the certified administrative record with his response to the Complaint (as required by statute) and then failed to comply with this Court's order to do so.

1  This Court has characterized that conduct as "vexatious." The
2  Secretary repeated that vexatious conduct in this case when he,
3  again, intentionally, failed to serve the certified administrative record
4  until months after it was due. When he did so, the record was filled
5  with materials that were not considered by either the ALJs of the
6  Medicare Appeals Council (MAC) considering the claims at issue.
7  These materials were thrown in because the Secretary thinks they
8  are helpful; a practice that is plainly improper in this action.

9  Incredibly, *after* this Court's "bad faith" finding, the Secretary
10 continued to deny Mr. Olsen's claims on the same bad faith grounds
11 leading to this suit. Indeed, *after* the filing of this suit, the Secretary
12 continued to deny Mr. Olsen's claims on the same bad faith grounds.
13 *See* Dkt. #35 at 1-2 (describing the rejection of Olsen's claim for
14 coverage of sensors on November 10, 2021, and denial of his
15 request for redetermination on January 6, 2022). There is an active
16 controversy in this case that needs to be resolved by the Court.

17 The Secretary's motion should be denied. While styled a
18 motion for "summary judgment", what the Secretary actually seeks is
19 dismissal for lack of jurisdiction. The Secretary's citation to related
20 activity at the Tenth Circuit in the *Smith* case omits an important fact:

while the Tenth Circuit was drafting its decision, the Secretary was drafting his latest denial of Mrs. Smith's CGM claims. This and other errors with regard to the mootness inquiry were brought to the Tenth Circuit's attention in a petition for rehearing/rehearing *en banc* and the Tenth Circuit has ordered a response from the Secretary by October 25, 2022.

## I.    DISCUSSION

### A.    Objection to the Non-Record Materials Relied on by the Secretary

As previously noted by Olsen, the administrative record served by the Secretary in this case contains improper materials. See Dkt. #40. The Secretary relies on these improper materials in support of his current motion.

By way of background, pursuant to 42 U.S.C. § 405(g):

> As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.

This is one of the statutes passed by Congress that the Secretary chooses to routinely defy. As noted above, in the prior case, the Secretary failed to comply with the statute. Then, this Court ordered the Secretary to comply by a specific date, which the Secretary also

1  did not do. This Court characterized that conduct as "vexatious." See Olsen v. Becerra, 2021 WL 3683360 *2, n.1 (E.D. Wash. April 20, 2021).

In the present case, again, the Secretary defied Congress and did not serve the administrative record with his answer. When he finally did serve a record, it was not complete. Dkt. #15, 19. Then, he served another version that contained materials not part of the administrative record, that the Secretary included because he thought it would help his case. *See* Dkt. #33, 40. Because these materials were not considered by any entity below or exchanged with Mr. Olsen or Mrs. Olsen, they are not part of the Administrative Record. *See, e.g.*, 42 C.F.R. § 405.1042(a). The materials in the filed record appearing at AR29-42, AR510-545, and AR561-569 are not part of the record. Nevertheless, the Secretary relies on them throughout his brief.

It is elemental that, in an Administrative Record review case, the record is limited to materials considered below and not a new record made initially for the reviewing court. *See, e.g., Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.*

1  *U.S.D.A.*, 499 F.3d 1108, 1117 (9th Cir. 2007) (*citing Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

Thus, these materials may not be relied on by the Court and the arguments based on them should be stricken.

B. **The Secretary's Arguments Regarding Non-CMS-1682 Related Claims Are Baseless**

1. **The Secretary's Contentions Regarding the Two Claims in This Case**

With regard to the two claims at issue in this case, the Secretary contends that Olsen is financially responsible for them, and, therefore, absent reversal, Mr. Olsen remains subject to recoupment of monies paid on them, including by deducting the monies from Mr. Olsen's Social Security benefits. *See, e.g.*, AR12 ("[Olsen] remains financially responsible for the non-covered costs."); AR390([Olsen] is financially responsible for the non-covered costs."); 42 C.F.R. § 405.352.  Unless and until the Secretary's denial of coverage is reversed, this case cannot be moot or dismissed. *See* Prayer for Relief, ¶¶ 4 ("not supported by substantial evidence") and 5 ("provide coverage for the claims at issue").

The Secretary blames Olsen for the fact that the Secretary again engaged in bad faith in denying his claims. Mot. at 6.  It is

precisely this kind of alternate reality that led the Secretary to cause so much suffering and death through the ridiculous contention that a CGM is not "primarily and customarily used to serve a medical purpose".

Similarly, the Secretary contends that the actual results of the statutorily mandated adjudicative process at the Department: "have no practical or legal effect" and "exist only on paper." Mot. at 6-7. This is a position lacking in candor as even the Secretary's own regulations describe these as decisions that are "binding" on the parties, absent appeal/judicial review. See 42 C.F.R. §§ 405.1048(a) (ALJ decision - "binding on all parties"); 405.1130 (MAC decision - "binding on all parties"). The result of the decisions denying Olsen's claims in bad faith yet again that Olsen is subject to recoupment and only a decision of this Court can remove that liability.

**2.    The Secretary's Contentions Regarding Due Process**

As set forth in the Complaint and Olsen's co-pending motion for summary judgment, Olsen also alleges a Due Process violation and seeks appointment of a Special Master to oversee the Secretary's handling of CGM claims. See Complaint at Count IV and Prayer for Relief, ¶ 6. No person could have ever in good faith thought that a

1  CGM was not "primarily and customarily used to serve a medical
2  purpose." That is a bad faith position that the ALJs and the MAC
3  (and the lower bodies) asserted hundreds of thousands of times. As
4  alleged by Olsen, the ALJ and the MAC did so because they are not
5  neutral decisionmakers and, rather than their oaths and the laws of
6  the United States, their fealty is to the Secretary and whatever illegal,
7  ridiculous, deadly position he asserts.

8  The Secretary's motion first contends that Olsen was not
9  denied his property interest because the claims were paid. Mot. at
10 17. Even the Secretary does not really appear to believe that
11 because he concedes that, as a result of the denial of his claims,
12 Olsen is subject to recoupment. Olsen has a property interest in
13 receiving his Medicare benefits free from encumbrances. Thus, the
14 Secretary's motion in this regard is without basis.

15 Pursuant to the statutes, payments for covered Medicare
16 benefits are made either to or on behalf of beneficiaries and suppliers
17 have no independent right to payment. See 42 U.S.C. §
18 1395ff(a)(1)(A) ("entitled to benefits") and 1395k(a)(1)/(2)
19 ("entitlement to have payment made to him or on his behalf"). Thus,
20

1  the Secretary's contention that "any right to reimbursement belongs
2  to MiniMed" (Mot. at 18) is wholly without basis.

3  Without factual support, the Secretary asserts that MiniMed
4  covered the full costs of the CGM sensors that are the subject this
5  case. *Id.* That is without basis. Instead, generously, MiniMed
6  engaged in forbearance and did not immediately demand payment
7  while the appeal process played out. As described in the very
8  decisions that are the subject of this case, Olsen remained financially
9  responsible and, at any time, MiniMed could have both demanded
10 payment and ceased providing supplies. AR12 ("[Olsen] remains
11 financially responsible for the non-covered costs."); AR390([Olsen] is
12 financially responsible for the non-covered costs.").

13 The Secretary attempts to defend the lack of neutrality of the
14 ALJs and the MAC and their repeated and faith conduct on the
15 grounds that "they were doing their job", when they applied a facially
16 illegal and bad faith position to deny the claims of tens of thousands.
17 Mot. at 19-20. That is not the ALJ and the MAC's job. Their job is to
18 faithfully and impartially apply the laws of the United States. Thus,
19 the ALJs and the MAC cannot be bound by illegal policies of the
20 Secretary. Likewise, the ALJs and the MAC cannot be bound by bad

faith positions asserted by the Secretary, even if those assertions are in the form of a CMS "Ruling." Similarly, if tomorrow the Secretary issues a "ruling" that ALJs and the MAC are required to always deny coverage, the ALJs and the MAC will not be "doing their job" if they follow that illegal, biased policy.

Here, the ALJs and the MAC demonstrated that they were not impartial when they followed an illegal, bad faith policy just because the Secretary told them to. In no sense could such conduct be neutral, independent, and unbiased. That they item at issue is a life-saving device which the Secretary and his ALJ's and the MAC intentionally denied tens of thousands illustrates that abhorrent nature of the breach of the ALJs' and the MAC's duties. Again, the Secretary's motion should be denied and Olsen's motion granted.

**C.    The Secretary Did Not Carry His Burden to Show Mootness**

Next, the Secretary alleges that the case is moot because, after this suit was filed, the Secretary began taking steps to rescind his illegal, bad faith policy. The Secretary alleges he did so on May 13, 2022 (*i.e.*, four days before oral argument in the Tenth Circuit), after steadfastly defending the illegal policy, he enforced for more than five years that caused so much human suffering.

To recap, in response to numerous losses before his own ALJ's reversing denials contending that CGMs were not "durable medical equipment", the Secretary issued CMS 1682-R with immediate effect, without complying with the notice and comment provisions of 42 U.S.C. § 1395hh. As provided there, the Secretary asserted the bad faith position that a CGM was not "primarily and customarily used to serve a medical purpose" and, therefore, was not "durable medical equipment." As a CMS "Ruling", the discretion ALJ's previously had to order coverage of CGMs was eliminated and ALJs and the MAC were "bound" by CMS 1682-R (subject to their oaths of office). *See* 42 C.F.R. § 405.1063(b) ("CMS Rulings are … binding").

Thereafter, the Secretary denied the claims of thousands based on this illegal, bad faith policy. As recounted above, even after this Court found the policy to constitute bad faith, the Secretary continued to deny CGM claims on the bad faith grounds. Indeed, the Secretary only substantively reacted after the filing of this case.

The filing of this case and its assignment to the same judge who made the bad faith finding caused the Secretary to take (further) steps to avoid judicial review. In particular, after this case was filed in November, in December the Secretary issued a proposed final rule

to take effect on March 1, 2022, only for some CGM claims. Then, in an effort to resist Olsen's motion for a preliminary injunction, the Secretary issued the TDL, with immediate effect, purporting to retroactively cover *some* CGM claims. Like CMS 1682-R, the TDL issued in violation of the notice and comment provisions of § 1395hh. Next, four days before appellate oral argument in *Smith*, again without notice and comment, the Secretary issued CMS 1738 purporting to retroactively apply the "final" rule.

The Secretary contends that the courts are powerless to stop him. *See* Dkt. #17 at 9-10. That is a position the Secretary has also advanced in both the *Smith* and *Lewis* cases.

As explained by the Supreme Court in *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (cleaned up):

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with the public interest in having the legality of the practices settled, militates against a mootness conclusion. … The courts have rightly refused to grant defendants such a powerful weapon.

Although a defendant can try to prove "no reasonable expectation that the wrong will be repeated," its burden "is a heavy one." *Id*. at

633; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189-190 (2000) (standard is "stringent" and the burden is "formidable"). Even if a defendant ceases the challenged conduct, the plaintiff's claims will be moot *only* if the *defendant* proves that (1) "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *and* (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). The Supreme Court has explained that a mere alleged change in behavior and a professed disclaimer of any intention to revive the conduct does not suffice to make a case moot, but they are factors to be considered. *Grant*, 345 U.S. 633 ("Such a profession does not suffice to make a case moot …").

**1.    "Reasonable Expectation"**

When considering "reasonable expectation", *inter alia*, a court should consider: 1) the *bona fides* of the expressed intent to comply; 2) the effectiveness of the discontinuance; and 3) the character of the past violations. *Grant*, 345 U.S. at 633.

**a.    *Bona Fides***

With regard to *bona fides*, efforts to defeat judicial review (whether to avoid a sanction or insulate a prior decision) counsel against a finding of mootness. *Knox v. S.E.I.U.*, 567 U.S. 298, 307 (2012) (post-certiorari change "must be viewed with a critical eye"); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) ("Our interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review further counsels against a finding of mootness here."). Here, the Secretary's substantive efforts did not begin until after this case was filed in an effort to avoid a judicial review and the sought after preliminary injunction.

Moreover, a significant factor in making the "reasonable expectation" determination is whether the defendant continues to maintain that its prior conduct was lawful. If so, then there is no reason to expect that a defendant will refrain from engaging in that conduct in the future, despite a momentary change. *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42-43 (1944); *Knox*, 567 U.S. at 307 ("since the union continues to defend the legality of the Political Fight-Back Fee, it is not clear why the union would

necessarily refrain from collecting similar fees in the future."). Here, the Secretary has always defended his illegal conduct.

Another factor is how long the challenged policy has been in effect. *Gray v. Sanders*, 372 U.S. 368, 376 (1963). Here, for more than five years, the Secretary imposed his illegal, bad faith policy.

### b. Effectiveness of Discontinuance

Under *Grant*, a Court evaluating mootness should consider the effectiveness of discontinuance. *Grant*, 345 U.S. at 633.

Defiance of the notice and comment provisions is the very foundation of this case which the Secretary contends is legal (and that the Courts are powerless to stop him even if illegal). Indeed, the Secretary repeated that misconduct after this case was filed when he issued the TDL, without complying with the notice and comment provisions of § 1395hh. Given his contentions, the Secretary could never meet has "heavy burden" to show "effectiveness of discontinuance."

### c. Character of Past Violations

Pursuant to *Grant*, a Court evaluating mootness should, in some cases, consider the character of past violations. *Grant*, 345 U.S. at 633. If the past violation was an inadvertent traffic offense,

that might be one thing. If the past violation caused disability and death, another.

Olsen will not belabor the point but simply says that the character of the past violations of the very worst sort.

### d. "Completely and Irrevocably Eradicate the Effects of the Alleged Violation"

The Secretary bears the "heavy burden" of proving that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631.

Here, the Secretary did not even attempt to show compliance with this prong of the analysis. The Secretary has offered nothing about his effort to pay claims denied in the past or even to publicize the change of policy so that those subject to his past misconduct can know of the change. Having totally failed to even present any argument/evidence in this regard, the Secretary did not meet his burden.

### e. The Secretary's Comments Regarding Smith

With regard to mootness, the Secretary almost exclusively relies on the Tenth Circuit's decision in Smith. As detailed above, in addition to other errors, the Tenth Circuit simply assumed that the Secretary would not engage in continued wrongful behavior by

denying CGM claims. Of course, that is not consistent with the "heavy burden" standard dictated by the Supreme Court.

Moreover, amazingly, the Secretary actually denied another of Smith's claims within days of the Tenth Circuit's decision and the Tenth Circuit has called for a response by the Secretary due October 25. Thus, the Tenth Circuit's confidence that further denials could not reasonably be expected was disproved almost immediately by the Secretary.

## II.   CONCLUSION

For the reasons set forth above, the Secretary's motion should be denied in its entirety and Olsen's motions granted.

Respectfully submitted October 17, 2022.

PARRISH LAW OFFICES

By: */s/ James C. Pistorino*
James C. Pistorino
Pro Hac Vice

BRESKIN, JOHNSON, & TOWNSEND, PLLC

By: *s/Roger Townsend*
Roger M. Townsend, WSBA No. 25525
rtownsend@bjtlegal.com
1000 Second Ave, Suite 3670
Seattle, WA 98104
Phone: (206) 652-8660

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the state of Washington that on the date below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Vanessa R. Waldref
United States Attorney
John T. Drake
Assistant United States Attorney
UNITED STATED DEPARTMENT OF JUSTICE
920 W. Riverside Ave, Suite 340
Spokane, WA  99201

DATED October 17, 2022, at Seattle, Washington.

*s/ Abby Henry*
Abby Henry, Legal Assistant

CAPTION - 2

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660